George LEWIS, Appellant,

v.

UNITED PARCEL SERVICE, INC., Appellee.

No. 01–02–00829–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Nov. 4, 2004.

Rehearing Overruled Feb. 23, 2005.

Alice Oliver–Parrott, Maria Teresa Arguindegui, Burrow & Parrott, L.L.P., Houston, TX, for Appellant.

Kevin D. Jewell, Chamberlain, Hrdlicka, White, Williams & Martin, Reagan W. Simpson, Russell Dane Workman, King & Spalding LLP, Houston, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices JENNINGS and HIGLEY.

## OPINION

SHERRY RADACK, Chief Justice.

Appellant, George Lewis (Lewis), challenges a judgment entered on a take-nothing jury verdict in favor of appellee, United Parcel Service, Inc. (UPS), in his suit for negligence. Lewis presents seven issues, contending that the trial court erred in refusing to submit "a jury question regarding UPS's right of control," admitting hearsay testimony and denying Lewis the opportunity to voir dire a witness or to make an offer of proof, denying Lewis's motion for a mistrial, admitting expert opinion testimony that was based on a "false assumption," and denying his motion for a new trial. Lewis also contends that the jury's finding that UPS was not negligent was against the great weight and preponderance of the evidence and that the evidence was legally and factually in-

sufficient to support the jury's finding that he was negligent.

We affirm.

## Background

On October 11, 1999, Lewis, a millwright employed by Turbex Inc. (Turbex), arrived at a UPS facility at approximately 6:45 p.m., to repair a conveyer belt, the "M1–G2." Before making the repair, Lewis performed a "lockout/tagout" safety procedure[1] on the M1–G2 to prevent it from unexpectedly starting up. Although another adjacent feed belt, the "PF1–1" continued in operation, it stopped after an employee shift change. Around 10:30 p.m., while Lewis stepped onto the PF1–1 to retrieve a tool, he heard a buzzer signaling the start of the conveyor belt. Before he could escape, the conveyor belt injured his right foot.

In its charge to the jury, the trial court included standard definitions, in regard to both individuals and companies, of "negligence" and "ordinary care" and presented the following broad-form negligence question:

> Did the negligence, if any, of those named below, proximately cause the injury in question?
>
> Answer "YES" or "NO" for each of the following:
>
> a. United Parcel Service, Inc. ⎯⎯⎯⎯
> b. George Lewis ⎯⎯⎯⎯

The jury answered "no" as to UPS and "yes" as to Lewis.

## Jury Question on UPS's Right to Control

In issue one, Lewis contends that the trial court erred in failing to submit a right to control question to the jury. In

---

**1.** This procedure involves turning a switch and applying a lock to the switch to discon-

nect a conveyor belt from all energy sources.

fact, at the charge conference, both parties asked to have a right to control question added to the jury charge. Lewis requested that the following question be submitted: "Did United Parcel Service, Inc. [UPS] have the right to control safety policies and procedures at the Mykawa facility?" The trial court denied Lewis's request.

Lewis's petition alleges the negligent acts were that (1) *UPS's employee* started the conveyor without any warning and (2) *UPS's buzzer* did not work properly. It is uncontested that UPS is the owner of the Mykawa facility where Lewis was injured; UPS contracted with Lewis to repair the conveyor; and a UPS employee started the belt that caused Lewis's injuries. UPS undoubtedly has the right to control the safety policies and procedures of its *own* employees at its *own* facility. *See Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307, 309 (Tex.1983) (duty based on right to control is implicit in the master-servant relationship). Because these acts are attributable to UPS, not an independent contractor, UPS's right to control is implicit and, therefore, not an issue in this case. As such, the trial court did not err in refusing to submit the issue of right to control to the jury; rather, it properly submitted the issue of general negligence only. *See Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex.1995).

■ Lewis contends that the UPS employee turned on the conveyor belt, "instantly causing [Lewis's] right foot to be pulled into the belt drive system." "There was no time between the time [Lewis] heard the buzzer warning that the belt was going to be turned on and when the belt just took off and caught [Lewis's] foot." When an injury arises by or contemporaneously with the activity itself, a negligent activity claim arises. *See Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex.1992); *Wil-*

*son v. Metz*, No. 01–00–01193–CV, 2002 WL 501648, at *3 (Tex.App.-Houston [1st Dist.] Apr. 4, 2002) (not designated for publication). The evidence shows that Lewis was injured by or contemporaneously with the negligent activity itself, not by a condition created by the activity. Considering Lewis's injury to be the result of the negligent activity of UPS itself, the trial court found UPS had a duty as a matter of law. Therefore, UPS's duty was not a question of fact for the jury to determine under the circumstances of this case.

■ If negligent activity is raised by the evidence, general negligence instructions are proper. *See Keetch*, 845 S.W.2d at 264; *Ramming*, 861 S.W.2d at 464–65. Because this case is a claim for negligent activity, a general negligence charge was proper. *See Keetch*, 845 S.W.2d at 264; *Ramming*, 861 S.W.2d at 464–65.

The evidence supported a claim based on negligent activity. Having found duty as a matter of law, the trial court did not err in submitting a general negligence charge.

We overrule issue one.

### Denial of Voir Dire Examination and Offer of Proof

■ In issue two, Lewis contends that the trial court erred in "denying [him] the opportunity to voir dire [Paul Allen, a UPS security representative] or make an offer of proof" that was "necessary to demonstrate that Allen's testimony was based purely on hearsay."

At trial, the following exchange took place:

[UPS]: [UPS] calls Paul Allen.

[Lewis]: At this time [Lewis] moves to voir dire Paul Allen outside of the presence of the jury.

[UPS]: Mr. Allen is a plant engineering supervisor who would have been responsible for—

The Court: Supervisor for who?

[UPS]: UPS.

The Court: Request for voir dire is respectfully overruled.

[Lewis]: Judge, I need to make an offer of proof.

The Court: We can do it later.

[Lewis]: Judge, I wanted to give a narrative. I can't waive anything, Judge.

Later, during UPS's direct examination of Allen and after the trial court excused the jury for lunch, the following exchange took place:

The Court: Couple of things we need to cover. Prior to Mr. Allen coming to the bench [Lewis's] attorney asked if he could take him on voir dire outside the presence of the jury. I know that the reason may be moot now, but I don't know that for certain. So if there is anything [Lewis's] attorney wants to make as far as a bill, you can do that now if you like. I ask you to keep it relatively brief if you need to. Anything?

[Lewis]: No. I will just cross him.

Although Lewis asserts that Allen's testimony was inadmissible because "it was based purely on hearsay" and that he was prevented from showing this fact because the trial court did not allow him to voir dire Allen, Lewis directs us to no portion of Allen's testimony that he objected to as hearsay. Lewis merely asserts that Allen's testimony was "inadmissible and its admission probably caused the rendition of an improper judgment." An error may not be predicated upon a ruling that admits evidence unless a substantial right of a party is affected and a timely objection or motion to strike appears in the record, stating the specific ground for the objection, if the specific ground was not apparent from the context. Tex.R. Evid. 103(a)(1).

In regard to Lewis's assertion that the trial court denied him the opportunity to voir dire Allen, there is nothing in the record showing what Lewis intended to prove in his voir dire examination of Allen. Moreover, in regard to Lewis's assertion that the trial court prevented him from making an offer of proof until "it was too late," Rule of Evidence 103(b) states that "[t]he offering party shall, as soon as practicable, *but before the court's charge is read to the jury,* be allowed to make, in the absence of the jury, its offer of proof." Tex.R. Evid. 103(b) (emphasis added). Here, Lewis expressly declined the trial court's invitation to make an offer of proof during a break in Allen's testimony and well before the charge was read to the jury. Thus, there is no basis for us to review the trial court's admission of Allen's testimony and its denial of Lewis's request to voir dire Allen. *See* Tex.R.App. P. 33.1(a). Accordingly, we hold that Lewis has waived any error in regard to issue two.

We overrule issue two.

### Testimony Concerning Workers' Compensation Benefits

■ In issue three, Lewis argues that the trial court erred in failing to grant "a mistrial or a new trial" because "the jury was prejudiced" by testimony that Lewis received workers' compensation benefits.

■ We review a trial court's denial of a mistrial under an abuse of discretion standard. *Till v. Thomas,* 10 S.W.3d 730, 734 (Tex.App.-Houston [1st Dist.] 1999, no pet.). A trial court abuses its discretion if it acts without reference to any guiding rules or principles. *Downer v. Aquama-*

*rine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985).

 The injection of the issue of insurance into a trial does not automatically create reversible error. *Babcock v. Northwest Mem'l Hosp.*, 767 S.W.2d 705, 708 (Tex.1989). Rather, a complaining party must establish that the injection of the issue of insurance was prejudicial and actually caused the rendition of an improper judgment. *See Beall v. Ditmore*, 867 S.W.2d 791, 795 (Tex.App.-El Paso 1993, writ denied). In the absence of a clear showing by the complaining party that any reference to insurance resulted in harm or prejudice, a trial court does not abuse its discretion in refusing to declare a mistrial. *Brownsville Pediatric Ass'n v. Reyes*, 68 S.W.3d 184, 193 (Tex.App.-Corpus Christi 2002, no pet.).

During UPS's redirect examination, Larry Alvarez, the owner of Turbex, testified as follows:

[UPS]: Mr. Alvarez, have you had any discussions with Mr. Lewis since the accident about the possibility of him coming back to work?

[Alvarez]: Yes, sir, [I] have.

[UPS]: Where were you when that conversation took place?

[Alvarez]: Well, a couple of times—I can remember one time in particular I was out at a jobsite on my mobile phone. I had just talked to [Lewis's] brother, who worked for us at the time, and [Lewis] had talked to me a couple of weeks before or sometime before. I think his workman's comp was fixing to run out and he was worried about his source of money. And you know, trying to help the best way I could, I told him to go file for unemployment. That was money I had paid for on his behalf.

Lewis immediately objected to Alvarez's testimony because it violated his motion in limine and he requested an instruction to disregard. The trial court then sustained Lewis's objection, instructed the jury to disregard Alvarez's answer, and then excused the jury from the courtroom.

At this point, Lewis moved for a mistrial. However, after hearing argument from the parties, the trial court denied Lewis's motion. The trial court then brought the jury back into the courtroom and gave them the following additional instruction:

[The Court]: . . . .

I need to address one other area with you. And this is what took us so long. We were trying to find the best way to handle this situation. And this is our result. You just heard—and it wasn't anything intentional on his part. Mr. Alvarez is not an attorney. He is a business owner and that's why he is here today. He mentioned the issue of worker's compensation insurance. Best way for us to handle this is just to tell you now that there is what's called a worker's compensation lien in this case. Mr. Lewis did receive worker's compensation benefits. Because there's a lien, and that's just like a materialman's lien or something else, they, worker's compensation has a stake in this case. And if there is a recovery by [Lewis], part of that recovery will go to the worker's compensation company to reimburse them for the benefits they paid Mr. Lewis. That's all we need to say about that here. And let me just leave it at that.

Lewis argues that Alvarez's testimony "left the impression with the jury that Mr. Lewis was taken care of financially and clearly resulted in the jury's failure to find any negligence on the part of UPS." Furthermore, Lewis asserts that, because it was "uncontroverted" that he suffered

damages, the jury's failure to award him damages "clearly demonstrated [that the jury] was not going to follow any of the trial court's instructions."

■ However, in the absence of evidence to the contrary, we must presume that a jury followed a trial court's instructions. *Turner, Collie & Braden, Inc. v. Brookhollow, Inc.*, 642 S.W.2d 160, 167 (Tex.1982). Here, during deliberations, the jury submitted the following question to the trial court: "[i]f in question one we find that UPS was not negligent, do we answer [the damage question]?" After consulting with the parties, the trial court instructed the jury to "[p]lease follow the instructions as given to you in the charge of the [c]ourt." Neither party objected to this instruction, and Lewis does not challenge it on appeal. After further deliberations, the jury returned its finding of zero damages. It does not logically follow that, because the jury returned a finding of zero damages, it "was not going to follow any of the trial court's instructions."

We conclude that Lewis has not made a clear showing that he was harmed or prejudiced by Alvarez's testimony that he received worker's compensation benefits. Accordingly, we hold that the trial court did not abuse its discretion in denying Lewis's motion for a mistrial.

We overrule issue three.

### Sufficiency of the Evidence

■ In issue five, Lewis argues that the evidence in support of the jury's finding that UPS was not negligent was factually insufficient. In issue six, Lewis argues that the jury's finding that he was negligent was not supported by legally and factually sufficient evidence.

■ In our review of the legal sufficiency of the evidence, we consider all of the evidence in the light most favorable to the party in whose favor the verdict was rendered, and we indulge every reasonable inference from the evidence in that party's favor. *Formosa Plastics v. Presidio Eng'rs,* 960 S.W.2d 41, 48 (Tex.1998). Anything more than a scintilla of evidence is legally sufficient to support the finding. *Id.*

■ Our review of the factual sufficiency of the evidence that Lewis was negligent requires us to consider, weigh, and examine all of the evidence that supports and contradicts the jury's determination. *Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex.1989). We may set aside the verdict only if the evidence that supports the jury's finding is so weak as to be clearly wrong and manifestly unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex. 1986). In our review of the factual sufficiency of the evidence that UPS was not negligent, we must first examine the record to determine if there is some evidence to support the finding and, if so, then we must determine, in light of the entire record, whether the finding is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *Dow Chem. Co. v. Francis,* 46 S.W.3d 237, 241 (Tex.2001).

Lewis argues that the jury's finding that UPS was not negligent was against the great weight and preponderance of the evidence because (1) "[he] had no reason to believe the PF1–1 was still active, because he had watched the last shift leave for the night," (2) Jerry Carpenter, a UPS supervisor, "could have alerted [him] at 8:00 p.m. that a shift was coming in at 10:00 p.m.," and (3) Carpenter could have told the employee who started the PF1–1 that Lewis was repairing the M1–G2 conveyor belt "before authorizing her to start the [PF1–1] at 10:00 p.m." Lewis also contends that this evidence was so strong that it demonstrates that the evidence supporting

the jury's finding that he was negligent was so weak that the finding was clearly wrong and manifestly unjust. Moreover, Lewis asserts the expert witness testimony of Lanny Berke, a mechanical engineering safety consultant, who stated that Lewis was negligent because he was "required" to lockout/tagout the PF1–1 was "no evidence" because a federal regulation, upon which Berke relied on in reaching this conclusion, did not apply to Lewis "between shift changes."

Regardless of Berke's testimony that Lewis was negligent, there was ample evidence, under each of the appropriate standards of review, to support the jury's findings that UPS was not negligent and that Lewis was negligent. Carpenter testified that Lewis was authorized to lockout the PF1–1 if he "needed that belt shut off" and that, if Lewis had followed the lockout/tagout safety procedure in regard to the PF1–1, it would not have started. Allen testified that the five-second delay between the warning buzzer and the start of the PF1–1 had worked the day after Lewis was injured, and Alvarez testified that Lewis told him that he had heard the buzzer and that he "just [did not] react to it." Alvarez also testified that Turbex was responsible for training Lewis in "the safety aspects of his job" and for supervising him while he was at a customer's facility, and that Lewis should have gotten out of "harm['s] way very fast" when he heard the buzzer.

Lewis admitted that lockout/tagout was an important safety procedure and that he had been using it "for a very long time." He also testified that he knew that it was dangerous to step onto a conveyor belt that had not been locked out, and he admitted that nothing had prevented him from locking out the PF1–1. Finally, Berke also testified that he examined the scene of the accident, reviewed the relevant documents, and concluded that, in his opinion, UPS did nothing to cause the accident.

This evidence supports the jury's finding that Lewis, and Lewis alone, was at fault for his accident. Accordingly, we hold that the evidence was legally sufficient to support the jury's finding that Lewis was negligent. Moreover, we cannot conclude that the evidence supporting the jury's finding that Lewis was negligent was so weak, or the evidence against it so strong, that the finding was clearly wrong and manifestly unjust. Neither can we conclude that the jury's finding that UPS was not negligent was so against the great weight and preponderance of the evidence as to be manifestly unjust. Accordingly, we hold that the evidence was factually sufficient to support the jury's findings that UPS was not negligent and that Lewis was negligent.

We overrule issues five and six.

### Conclusion

Having held that the evidence was factually sufficient to support the jury's finding that UPS was not negligent and legally and factually sufficient to support the jury's finding that Lewis was negligent, we need not address issue four (that the trial court erred in admitting expert opinion testimony regarding Lewis's loss of earning capacity) and issue seven (that the trial court erred in denying Lewis's motion for a new trial because the jury's finding of zero damages was contrary to the uncontested evidence and the instructions in the jury charge).

We affirm the judgment of the trial court.

Justice JENNINGS, concurring in the judgment only.

TERRY JENNINGS, Justice, concurring.

Appellant, George Lewis (Lewis), an independent contractor employee, did not present legally sufficient evidence to establish that appellee, United Parcel Service, Inc. (UPS), a premises owner, had a contractual right of control over his work, retained any control over his work, or did anything to ensure that he safely performed his work. Accordingly, I would hold that the trial court did not err in refusing to submit Lewis's proposed jury question regarding UPS's right to control safety procedures at its package-sorting facility. Because the majority opinion errs in concluding that "UPS's right to control is implicit and . . . not an issue in this case" and that the trial court did not err in refusing to submit a control issue to the jury because "it properly submitted the issue of general negligence only," I concur only in the judgment of this Court.

## Background

On October 11, 1999, Jerry Carpenter, a UPS local sort supervisor, contacted Lewis, a millwright[1] employed by Turbex Inc. (Turbex), to repair a conveyer belt located at a UPS package-sorting facility in Houston. At that time, Lewis had over 30 years of experience as a millwright and had worked "almost 20 years, off and on," for Turbex, an independent contractor hired by UPS to perform conveyor belt repairs.

When Lewis arrived at the UPS facility at approximately 6:45 p.m., Carpenter directed him to the "M1–G2" conveyor belt. Lewis performed a "lockout/tagout" safety procedure, which prevented the M1–G2 from unexpectedly starting up, and he then began his repairs. However, an adja-

cent primary feed belt, the "PF1–1" continued in operation. As the evening wore on, Lewis noticed a UPS employee shift change, and he saw that the PF1–1 was not in use. At approximately 10:30 p.m., as Lewis was clearing his work area, he stepped onto the PF1–1 to retrieve a tool, and, when he did so, he heard the sound of a buzzer signaling that the conveyor belt was about to start up. When the PF1–1 started up, Lewis's right foot was severely injured after it was pulled into a gap in the PF1–1.

Lewis subsequently sued UPS for negligence, alleging that UPS was negligent, generally, for certain acts and omissions and that UPS, as a premises owner, failed "to enforce pre-startup and pre-sort policies and procedures."

At trial, Carpenter testified that, if Lewis had performed the lockout/tagout safety procedure on the PF1–1 before stepping onto it, the belt would not have started up. Carpenter had seen Lewis perform this procedure on previous occasions, and Lewis was authorized to lockout the PF1–1 if he "needed that belt shut off." Carpenter also explained that, in his opinion, Lewis could have retrieved the tool without stepping onto the PF1–1.

Paul Allen, a UPS security representative, testified that UPS prohibited its employees and independent contractors from standing on the conveyor belts at its facility except for certain "metro gathering belts." He noted that, although he was not present at the facility on October 11, 1999, there should have been a five-second delay between the warning buzzer and the start up of the PF1–1. Allen explained that, when he tested the system the day after the incident, he observed that five

1. A millwright performs precision work with rotating equipment, including pumps, com-
pressors, turbines, and conveyor belts.

seconds elapsed between the time that the warning buzzer sounded and the start of the PF1–1. Allen also explained that UPS prohibited its employees from altering the duration of the delay.

Larry Alvarez, the owner of Turbex, testified that, after the incident, Lewis admitted that he heard the warning buzzer and "just [did not] react to it." Alvarez explained that, in his opinion, when Lewis heard the buzzer, he "should have gotten [himself] out of harm['s] way very fast."

Lewis testified that he knew that the lockout/tagout safety procedure was important and that he had been using it "for a very long time." Lewis also admitted that he knew it was dangerous to step onto a conveyor belt that had not been locked out and that nothing had prevented him from locking out the PF1–1. Lewis noted, however, that Carpenter had previously informed him by radio when UPS employees were preparing to start a conveyor belt. Lewis explained that the delay between the sound of the warning buzzer and the start of the PF1–1 was "the quickest delay [he] ever saw," and that, as a result, he did not have enough time to get off of the PF1–1. Lewis estimated that the delay was only one or two seconds long.

At the charge conference, UPS, citing *Redinger v. Living, Inc.*, 689 S.W.2d 415, 418 (Tex.1985), objected to the "absence of a control issue incorporated into the case" on the grounds that Lewis had worked for an independent contractor and that "Texas law establishes certain rules that apply to that relationship, one being that there is no obligation to insure that a contractor's employee perform the work in a safe manner unless there is a right of control." The trial court, on the record, distinguished *Redinger* on the basis that the instant case "is not a general contractor case, which *Redinger* was." The trial court also noted that Lewis was not "claiming ... UPS

should have watched Lewis and should have made sure he did his job in a safe manner." After UPS cited additional authority, the trial court overruled its objection.

Lewis then tendered the following written question to the trial court and requested that it be submitted to the jury:

Did United Parcel Service, Inc. (Ohio) have the right to control safety policies and procedures at the Mykawa facility?

The trial court denied Lewis's request and marked the question "refused."

In its charge to the jury, the trial court included standard definitions, in regard to both individuals and companies, of "negligence" and "ordinary care" and presented the following broad-form negligence question:

Did the negligence, if any, of those named below, proximately cause the injury in question?

Answer "YES" or "NO" for each of the following:

 a. United Parcel Service, Inc. ———
 b. George Lewis ———

The jury answered "no" as to UPS and "yes" as to Lewis.

### Jury Question on UPS's Right of Control

In issue one, Lewis contends that the trial court erred in refusing to submit a jury question regarding UPS's right to control safety procedures at its package-sorting facility. Referencing two of the numerous theories of liability asserted by Lewis in his amended petition, the majority opinion notes that Lewis alleged that "(1) *UPS's employee* started the conveyor without any warning and (2) *UPS's buzzer* did not work properly." The majority opinion reasons that, because these two acts "are attributable to UPS, not an independent contractor, UPS's right of control

is implicit and, therefore, not an issue in this case" and "the trial court did not err in refusing to submit the issue of right to control to the jury; rather, it properly submitted the issue of general negligence only." The majority opinion further concludes that "a general negligence charge was proper."

However, neither party actually challenges the trial court's use of the basic definitions of "negligence" and "ordinary care," or its submission of a broad-form negligence question. Instead, the issue squarely presented to this Court is whether the trial court erred in refusing to submit to the jury Lewis's theory of liability based on UPS's alleged duty, as a premises owner, to ensure that Lewis, an independent contractor employee, safely performed his work—an issue which, as demonstrated by the facts as I have presented them above, was, if not properly pleaded, expressly tried by the consent of both parties. *See* Tex.R. Civ. P. 67 ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."). Under this theory of liability, the negligent activity in question is that of Lewis himself, *i.e.,* stepping onto the PF1–1 without performing UPS's lockout/tagout procedure on the PF1–1. The majority opinion's conclusion that the "trial court did not err in submitting a general negligence charge" ignores the actual issue presented to this Court and answers an issue that neither party has raised.

Like the trial court below, the majority opinion misses Lewis's point. Lewis's point, clearly articulated to this Court, is

that he "presented more than a scintilla of evidence showing UPS was liable for failing to exercise its control over the safety methods and procedures with reasonable care" because Carpenter "never asked Mr. Lewis to lockout the adjacent conveyor that caused Mr. Lewis's injuries." Lewis asserts that the "evidence is uncontroverted that Mr. Lewis was required to follow the 'UPS lockout procedures,' and that UPS retained the right of control over compliance with its lockout procedures." He argues, thus, that his "requested jury question on UPS's right of control was material, properly worded, and dispositive on the issue of liability."

Had Lewis presented more than a scintilla of evidence that UPS, as a premises owner, had a contractual right of control over Lewis' work, retained any control over Lewis' work, or did anything to ensure that Lewis safely preformed his work, he would have been entitled to a properly phrased issue and instruction on UPS's "right to control" safety procedures. *See* Tex.R. Civ. P. 278 (A trial court must submit to a jury "questions, instructions and definitions ... which are raised by the written pleadings and the evidence."). As explained by the Texas Supreme Court:

> Right to control may be shown by explicit contractual assignment or actual exercise of control. Generally, the former is a question of law for the court and the latter a question of fact for the jury.

*Shell Oil Co. v. Khan,* 138 S.W.3d 288, 292 (Tex.2004) (footnotes omitted).[2]

**2.** In cases brought against a property owner for the negligent activity of an independent contractor, the Texas Pattern Jury Charges, addressing the fact issue of whether a property owner actually retained a right of control, provide the following predicate to the appro-

priate liability question: "Did ... [the property owner] have a right to control [the injury-causing activity] ... on the premises?" 2 Comm. on Patern Jury Charges, State Bar of Tex., Texas Pattern Jury Charges PJC 66.3 (2d ed.2002).

Moreover, the Supreme Court has emphasized that it is "fundamental to our system of justice that parties have the right to be judged by a jury properly instructed in the law." *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 388 (Tex. 2000). We have been admonished that "when a jury bases a finding of liability on a single broad-form question that commingles invalid theories of liability with valid theories, [an] appellate court is often unable to determine the effect of [such an] error." *Id.* A jury must be able to base its verdict on legally valid questions and instructions. *Id.* Here, a right to control safety issue was critical to Lewis because the jury simply could not have understood, without proper guidance, that UPS, as a premises owner, could have been held liable to Lewis, an independent contractor employee, for Lewis's own negligent activity. A finding on a right to control issue would have been equally important to UPS had the jury found that its · negligence proximately caused Lewis's injury because UPS could have, theoretically, been "held liable without a judicial determination that a factfinder actually found that [it] *should* be held liable on proper, legal grounds." *Id.* Accordingly, I disagree with the majority opinion's characterization of the issue and with its analysis, and I turn to the merits of Lewis's first issue and his arguments presented.

Lewis asserts that UPS "dictated the safety methods and procedures that [Lewis] was required to follow" and "retained the right of control over compliance with its lockout procedures." In fact, Carpenter testified that UPS required its independent contractors to be "familiar with the UPS procedure for lockout/tagout" and that "they abide by it." Lewis, thus, concludes that the trial court erred in denying his proposed question "on UPS's right of control over the safety and lockout procedures [he] was required to follow on UPS's

premises." In support of his argument, Lewis relies on *Redinger* and *Dow Chemical Co. v. Bright*, 89 S.W.3d 602 (Tex.2002), *Lee Lewis Construction, Inc. v. Harrison*, 70 S.W.3d 778 (Tex.2001), and *Hoechst–Celanese Corporation v. Mendez*, 967 S.W.2d 354 (Tex.1998).

As noted by the Texas Supreme Court, a premises owner or occupier generally does not have a duty to ensure that an independent contractor safely performs his work. *Redinger*, 689 S.W.2d at 418. The *Redinger* court noted that an owner or occupier of land has a duty to use reasonable care to keep the premises under his control in a safe condition and that a general contractor, who is in control of a premises, is charged with the same duty as an owner or occupier. 689 S.W.2d at 417. The court also noted that:

> This duty to keep the premises in a safe condition may subject the general contractor [premises owner] to direct liability in two situations: (1) those arising from a premises defect, (2) those arising from an activity or instrumentality.

*Id.* The Court concluded that the case before it was "not a premises defect case," but was instead a case involving "an injury caused by an activity conducted on the premises." *Id.* The Court then went on to adopt the rule that

> [o]ne who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

*Id.* at 418 (quoting RESTATEMENT (SECOND) OF TORTS § 414 (1977)).

Accordingly, where a premises owner either contractually retains or actually exercises control over the independent con-

tractor's work, the premises owner must exercise that control with reasonable care. *Koch Ref. Co. v. Chapa,* 11 S.W.3d 153, 155 (Tex.1999). For example, "an employer [premises owner] who gives on-site orders or provides detailed instructions on the means or methods to carry out a work order owes the independent contractor employee a duty of reasonable care to protect him from work related hazards." *Mendez,* 967 S.W.2d at 357 (citing *Redinger,* 689 S.W.2d at 418). Safety requirements also "give rise to a *narrow* duty of care." *Mendez,* 967 S.W.2d at 357. This "narrow" duty is "commensurate with the control [the premises owner] retains over the contractor's work." *Id.* However, "merely exercising or retaining a general right to recommend a safe manner for the independent contractor's employees to perform their work is not enough to subject a premises owner to liability." *Bright,* 89 S.W.3d at 607 (quoting *Koch,* 11 S.W.3d at 155).

In *Mendez,* the Texas Supreme Court held that a premises owner's "insistence" that an independent contractor "observe and promote compliance with federal laws, general safety guidelines, and other standard safety precautions did not impose an unqualified duty of care on [the premises owner] to ensure that [the independent contractor's] employees did nothing unsafe." *Id.* at 357–58. Rather, the premises owner owed the independent contractor's employees "a duty that any safety requirements and procedures it promulgated did not unreasonably increase, rather than decrease, the probability and severity of injury." *Id.* at 358.

Here, as noted above, Carpenter testified that UPS required independent contractors to be "familiar with the UPS procedure for lockout/tagout" and that "they abide by it." However, as noted in *Mendez,* this evidence does not establish that

UPS owed Lewis an unqualified duty of care to ensure that Lewis did nothing unsafe. *See id.* at 357–58. Lewis, in fact, performed a lockout/tagout safety procedure on the M1–G2 belt that he repaired, and he directs us to no evidence that UPS's policies and procedures required the lockout/tagout of adjacent conveyor belts not being serviced.

More importantly, there is no evidence in the record that UPS had a contractual right of control over Lewis's work, retained any control over Lewis's work, or did anything to ensure that employees of independent contractors actually followed UPS's lockout/tagout policies and procedures. Although UPS may have insisted that independent contractors "abide by" its lockout/tagout procedures, there is no evidence that UPS monitored employees of independent contractors or in any way inspected their work to ensure that they complied with its procedures. *Cf. Harrison,* 70 S.W.3d at 784–85 (holding testimony that employee of general contractor had "the responsibility to routinely inspect . . . to see to it that the subcontractors and their employees properly utilized fall protection equipment" constituted more than scintilla of evidence that general contractor retained right to control fall protection system on jobsite).

## Conclusion

Because there is no evidence in the record that UPS had a contractual right of control over Lewis's work, retained any control over Lewis's work, or did anything to ensure that employees of independent contractors actually followed UPS's lockout/tagout policies and procedures, I would hold that the trial court did not err in refusing to submit Lewis's proposed jury question regarding UPS's right to control safety procedures at its package-sorting facility. However, I disagree with

the majority opinion's characterization of the issue presented, its analysis, and its conclusions that "UPS's right to control is implicit" and that the trial court did not err in refusing to submit a control issue because "it properly submitted the issue of general negligence only." Accordingly, I concur only in the judgment of this Court.