Opinion to: SJR TGT SN TJ EVK ERA GCH LCH JB


















Opinion issued August 20, 2009

 

 

 

 



 

 

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-07-01106-CV

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



KENNETH W. MOSS and MICHELLE MOSS, Appellants

 

V.

 

WASTE MANAGEMENT OF TEXAS, INC., Appellee

 

 



On Appeal from the 125th District Court

Harris County, Texas

Trial Court Cause No. 2005-72220

 




 
 
 
 
 
 
 


 

 



O P I N I O N

This appeal
arises from a jury’s verdict in favor of a property owner, sued for its
negligence after a truck-pedestrian accident occurred on its premises.  A Rustin Transportation Company (Rustin) employee,
driving a company eighteen-wheeled truck, struck and injured Kenneth Moss, a fellow
employee, while Moss directed Rustin trucks at a waste transfer facility owned
by Waste Management of Texas, Inc. (Waste Management).  Moss sued Waste Management, the premises
owner, for negligence.[1]  A jury found that Waste Management did not control
Rustin’s activities.  Based on the jury’s
finding, the trial court ordered that Moss take nothing in his suit against Waste
Management.  Moss appeals the jury
verdict and judgment, contending that (1) the trial court erred in predicating
the liability and damages issues on whether Waste Management exercised control over
Rustin’s activities, and (2) the jury’s right-to-control finding is against the
great weight and preponderance of the evidence.  We conclude that the trial court did not err
in submitting the right-to-control issue and that factually sufficient evidence
supports the jury’s verdict.  We therefore
affirm. 

Background

Facts giving rise to Moss’s suit

          Waste Management
works with other private and municipal waste disposal operations to collect garbage.  In connection with these activities, Waste
Management owns transfer stations—in this case, the Koenig Street station—where
waste disposal truck drivers dump their loads. 
These strategically placed transfer stations minimize the number of long
trips to outlying landfills and allow the trucks to quickly return to their
routes.  

As the
facility collects waste, operators weigh, sort, and compact it, then load it
onto trucks and deliver it to landfills. 
One such operator, Rustin, contracts with Waste Management to load and
haul processed garbage from the Koenig
 Street station to landfills outside Houston. 

Under the
Loading and Transportation Service Agreement between Waste Management and
Rustin (the contract), Rustin agreed to serve as Waste Management’s preferred
transporter for its loading and shipment requirements at certain locations,
including the Koenig Street facility.  Rustin
agreed to provide personnel, tractor-trailer units, and equipment sufficient to
load and transport up to 2,500 tons of waste delivered daily to the facilities
and to render its services in a legal and safe manner.  The contract declares that Rustin is
responsible for “initiating, maintaining, and supervising all health and safety
precautions, requirements and programs for its employees, subcontractors,
vendors and other persons in connection with the [s]ervices.”  Waste Management retained the right to
“inspect, review, and monitor” Rustin’s performance under the agreement to
ensure satisfactory compliance. 




As an
employee of Rustin, Moss worked at the Koenig Street station as a “spotter,”
directing trucks into the bays as they entered the station and conducting
periodic inspections to ensure that the garbage dumped at the station did not
contain hazardous waste.  In late February
2004, one of Rustin’s drivers struck Moss while backing his truck into the
transfer station, causing Moss serious injuries.  

Proceedings in the trial court

          Moss sued Waste Management, asserting
that it breached its duty of care to Moss by failing to 

·       
provide adequate warning to employees of contractors working at its
facility; 

·       
adequately supervise activities on its premises; 

·       
adequately control or limit the volume of garbage and traffic entering
the facility; and

·       
design the facility so that it could safely accommodate the volume of
garbage and traffic it handles.

The parties
tried the case before a jury.  The jury
heard disputed evidence concerning the extent to which Waste Management
exercised authority over the transfer station, but none that Waste Management
deviated in any material way from the oversight activities described in the
contract.  Both Waste Management and
Rustin managers consistently testified that Rustin alone was responsible for
controlling traffic at the transfer station, training its drivers and spotters,
and hauling trash to the landfills.

At the
close of evidence, the trial court prepared the jury charge with the parties’
participation.  Over Moss’s objection,
the court’s first question to the jury inquired whether Waste Management had or
exercised any right of control over Rustin’s activities.[2]  The question read:

Question No. 1:

Did Waste Management of Texas, Inc., exercise or retain some control over
the manner in which Rustin Transportation performed its duties and
responsibilities at the WRS Transfer Station, other than the right to order the
work to start or stop or to inspect progress or receive reports?

Answer “Yes” or “No”:

  The jury answered “no.” Because the trial
court predicated the remaining questions on an affirmative response to Question
No. 1, the jury did not answer any questions about liability or damages.   The
trial court then rendered judgment that Moss take nothing in his suit against
Waste Management.  

Discussion

Jury Charge 

Moss first
contends that the trial court erred in submitting a question to the jury
predicating liability and damages upon Waste Management’s right to control the
manner in which Rustin performed its duties and responsibilities.  Specifically, Moss contends that the trial
court erred in submitting Question No. 1 because he brought a direct negligence
action against Waste Management based on Waste Management’s operation and
management of the Koenig Street waste transfer station, not a premises
liability claim against Waste Management.  

Error preservation

As a
preliminary matter, we address Waste Management’s claim that Rustin waived this
issue by merely objecting to the submission of the question as “inappropriate” without
also tendering a substantially correct question.  Texas Rule of Civil Procedure 274 provides
that “[a] party objecting to a charge must point out distinctly the
objectionable matter and the grounds of the objection.”  Tex.
R. Civ. P. 274.  Whether a party
must do more than object to preserve an issue for appeal, however, depends on
the nature of the objection.  When a
party, like Moss, contends that another party’s proposed question be omitted
entirely, that party is not required to tender a substantially correct
definition or question.  See Turner v. Precision Surgical, L.L.C.,
278 S.W.3d 245, 248 n.2 (Tex. App.—Houston
[1st Dist.] Oct. 17, 2008, no pet.). 
Moss’s objection preserved his contention for appellate review.  

Standard of review for jury charge issues

We review the
trial court’s submission of instructions and jury questions for an abuse of
discretion.  European Crossroads’ Shopping Ctr., Ltd. v. Criswell, 910 S.W.2d
45, 54 (Tex. App.—Dallas 1995, writ denied).  A trial court abuses its discretion when it
acts in an arbitrary or unreasonable manner, or if it acts without reference to
any guiding rules or principles.  Downer v. Aquamarine Operators, Inc.,
701 S.W.2d 238, 241–42 (Tex.
1985).  A trial court has wide discretion
in submitting instructions and jury questions.  Howell
Crude Oil Co. v. Donna Ref. Partners, Ltd., 928 S.W.2d 100, 110 (Tex. App.—Houston [14th Dist.] 1996,
writ denied). 

          Right
to control

Moss
asserts that the trial court erred in submitting Question No. 1 to the jury
because his cause of action against Waste Management is one for direct negligence,
not premises liability.  Under a premises
liability theory, the occupier of land has a duty to use reasonable care to
keep the premises under its control in a safe condition, and may be subject to
liability for negligence in situations arising from a premises defect as well
as those arising from an activity or instrumentality.  See Dow
Chem. Co. v. Bright, 89 S.W.3d 602, 606 (Tex.
2002); Redinger v. Living, Inc., 689
S.W.2d 415, 417 (Tex. 1985); see also Dyall v. Simpson Pasadena Paper Co.,
152 S.W.3d 688, 697 n.11 (Tex. App.—Houston
[14th Dist.] 2004, pet. denied) (explaining that premises liability category is
for those defects that existed on premises when independent contractor entered
on property or that were created through some means unrelated to independent
contractor’s activity).

Absent a duty, however, Waste Management cannot be
held liable for Moss’s injuries as a matter of law.  See
Kroger Co. v. Elwood, 197 S.W.3d 793, 794 (Tex.
2006) (citing El Chico Corp. v. Poole,
732 S.W.2d 306, 311 (Tex.
1987)).  The pertinent issue, then, is
whether Waste Management owed Moss a duty to use reasonable care in preventing
the type of accident that resulted in Moss’s injuries.  

Premises owners
like Waste Management have no duty to see that independent contractors like Rustin
use reasonable care in performing their work unless they exercise control over
the independent contractor’s activity.  Clayton W. Williams, Jr. v. Olivo, 952
S.W.2d 523, 527–28 (Tex.
1997); Redinger, 689 S.W.2d at 418.  A plaintiff seeking to prove that the
property owner is liable for a negligent act therefore must prove that (1) the owner
had a contractual right of control or exercised actual control, in a way that
extends to the operative detail of the contractor’s work, and (2) a nexus
exists between the owner’s retained control and the activity that caused the
plaintiff’s injury.  Gen. Elec. Co. v. Moritz, 257 S.W.3d 211, 214 (Tex.
2008); Ellwood Tex. Forge
Corp. v. Jones, 214 S.W.3d 693, 700 (Tex. App.—Houston [14th Dist.] 2007, pet. denied).   

          Moss contends that, as the owner and
operator of the Koenig Street
station, Waste Management’s “right to control its own premises is implicit,” which
makes the jury question on right to control improper.  Moss relies on our decision in Lewis v. UPS, Inc., in which Lewis, an
independent contractor hired to repair UPS’s equipment, brought a negligence
action for injuries resulting from activities conducted by UPS employees while
he was on UPS’s premises making the repair. 
175 S.W.3d 811, 814 (Tex. App.—Houston [1st Dist.] 2004,
pet. denied).  Lewis alleged as the
negligent acts causing his injury that (1) a UPS employee started a conveyor
without any warning, and (2) UPS’s warning buzzer did not work properly.  Id.  We held that, because these acts were
attributable to UPS and not an independent contractor, UPS’s right to control
the injury-causing activity was implicit.  Id.  Consequently, we held that the trial court did
not abuse its discretion in refusing to predicate the negligence issue on a
right-to-control question.  Id.   In
contrast, here, Moss did not allege or produce evidence that a Waste Management
employee’s acts directly caused this accident—a Rustin employee drove the truck
and another flagged it into the bay.

The facts thus resemble those in the Texas Supreme
Court’s decision in Dow Chemical, in
which the plaintiff, a carpenter employed by Gulf States, an independent
contractor retained by Dow, suffered injuries when an overhead pipe, which
another Gulf States employee had improperly installed, became unstable and fell
on him, trapping his arm and causing his injury.  89 S.W.3d at 605.  The plaintiff sued Dow, alleging it was
negligent for failing to withhold a safe work permit for the area until the
pipe was properly installed, or, alternatively, for failing to implement a
safety rule detailing how the ends of pipes should be secured before allowing
workers in an area.

Dow
required Gulf States,
like its other independent contractors, to comply with Dow’s safety rules and
regulations.  The agreement between Dow
and Gulf States, however, did not grant Dow
any right either to control the means, methods, or details of Gulf
 States’ work, or to direct the order in which Gulf States’ work should be done.

Under those
circumstances, the Supreme Court held, a duty of control is not implicit, and
the plaintiff bears the burden to prove right of control as a predicate to
liability.  See id. at 606–08; see also
Olivo, 952 S.W.2d at 529 (confirming that simple negligence question,
unaccompanied by right-to-control issue, cannot support recovery under premises
liability theory).  Similarly here, a
fellow Rustin employee struck Moss with his truck, and Moss’s claims against
Waste Management were claims of a failure to warn or supervise.  Given these facts, we hold that the trial
court did not err in concluding that a right to control is an element of the
simple negligence claim asserted against Waste Management. 

Propriety of submitting right-to-control
question

Because
Waste Management’s right to control is an essential element of Moss’s
negligence claim, the trial court’s submission of Question No. 1 to the jury is
improper only if the evidence conclusively shows that Waste Management exercised
or retained a right to control the acts that led to Moss’s injury.  See Brown
v. Bank of Galveston, 963 S.W.2d 511, 515 (Tex.
1998); see also City of Keller
v. Wilson, 168 S.W.3d 802, 814–15 (Tex. 2005).  Moss first contends that the contract between
Waste Management and Rustin evidences that Waste Management retained a right to
control.  The Dow Chemical court observed that either a contract or a premises
owner’s actual conduct may give rise to a right to control, and corresponding
duty of care.  89 S.W.3d at 606–07.  To support his contention, Moss points to
provisions under which Waste Management retained a right of access to the
transfer station, as well as the right to inspect, review, and monitor Rustin’s
performance under the contract.  Those
provisions, however, do not indicate that Waste Management retained control
over the details of Rustin’s work, such as how or where Rustin loaded its
trucks.  On the contrary, the contract
expressly places with Rustin the sole responsibility for the care, custody, and
control of the waste deposited at the facility until it reaches its destination
landfill, and specifies that, according to the parties’ understanding, neither
Rustin Transportation nor its employees were agents or employees of Waste
Management, “but an independent contract carrier.”  Read as a whole, the contract does not
conclusively prove that Waste Management retained any right to control the
means, methods, or details of Rustin’s work, such that the trial court was
required to direct a verdict in favor of Moss on the issue.

          Nor do the circumstances that resulted
in Moss’s injury conclusively prove that Waste Management retained an actual right
to control the details of Rustin’s work in (1) driving or directing its trucks
into the bays, (2) conducting random inspections to prevent dumping of
unauthorized waste at the transfer station, or (3) choosing which of the transfer
station’s loading bays to use in the course of handling the volume of trash specified
under the contract.  Rather, witnesses at
trial, including managers from both companies and Moss himself, testified that
Rustin employees handled those matters.  Because
the contract and the actual circumstances do not conclusively prove that Waste
Management retained control over the details of Rustin’s work, the right to control
remained a fact issue for the jury to decide. 
Accordingly, under the facts alleged by Moss and proved at trial, we
hold that the trial court did not abuse its discretion in submitting Question
No. 1 to the jury, and in predicating the remaining questions on the jury’s
affirmative answer to that question.

          Separate from a duty arising from its
negligent activity, an owner or occupier has a duty to inspect the premises for
defects pre-existing the independent contractor’s entry and to warn the
independent contractor of concealed hazards about which the owner knows or
should have known.  Shell Oil Co. v. Khan, 138 S.W.3d 288, 295 (Tex. 2004).  While Moss alleged in his petition that the
defective design of the premises caused his injuries and that Waste Management
did not warn him of those defects, at trial he did not produce any evidence of
any concealed hazard causing Moss’s injury of which Waste Management should
have, but failed to, warn, independent of Waste Management’s failure to
properly control Rustin’s activities on its premises.  The negligence issue, as framed for the jury,
was one of negligent acts or failures to act, not of a non-obvious premises
defect or hazard.  We thus hold that the
trial court did not err in predicating the question of Waste Management’s
liability to Moss on its right to control Rustin’s work because the jury heard
no evidence of a concealed hazard on the premises, independent from allegations
that Waste Management failed to properly supervise or control Rustin’s
activities at the Koenig Street station. 
    

Factual Sufficiency 

As an alternative
ground for appellate relief, Moss contends that the jury’s finding that Waste
Management did not exercise or retain some control over the manner in which Rustin
performed its duties and responsibilities was against the great weight and
preponderance of the evidence and was manifestly unjust. 

Standard of Review

          In reviewing a factual sufficiency
point, we consider all the evidence supporting and contradicting the finding.  Plas-Tex,
Inc. v. U.S. Steel Corp., 772 S.W.2d 442, 445 (Tex.
1989); HTS Servs., Inc. v. Hallwood
Realty Partners, L.P., 190 S.W.3d 108, 111 (Tex.
App.—Houston
[1st Dist.] 2005, no pet.).  We set aside
the verdict only if the finding is so contrary to the overwhelming weight of
the evidence as to be clearly wrong and unjust.  Cain v.
Bain, 709 S.W.2d 175, 176 (Tex.
1986).  Courts of appeals should detail
the evidence relevant to the issue and state why the jury’s finding is so
against the great weight and preponderance of the evidence as to be manifestly
unjust.  Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex. 1986).  Further, courts of appeal should state in what
regard the contrary evidence greatly outweighs the evidence in support of the
verdict.  Id.


          Moss first directs our attention to
the testimony of Charles Rivett, who was Waste Management’s senior district
manager for disposal operations at the time of Moss’s injury, specifically,
Rivett’s testimony that he oversaw activities at three transfer stations.  In his testimony, Rivett denied having any
oversight authority over Rustin’s day-to-day operations.  Rather, he explained, his duties consisted of
ensuring that Rustin conducted regular training programs and asking whether
Rustin had any particular concerns concerning operations as they pertained to
Waste Management.  Rivett stated that Waste
Management relied on Rustin to provide its own safety and operate within
applicable rules, and expected Rustin to notify him if it believed that Waste
Management should correct an unsafe condition or situation.  

          Moss asserts that the testimony of
Rivett and Douglas Travis, Rustin’s safety director at the Koenig Street
transfer station, also proves that Waste Management retained exclusive control
over (1) volume of trash dumped at and removed from the premises, (2) the
design of the premises, (3) entry to and exit from the facility, (4)
authorization of persons and entities to dump at the premises, (5) hours of
operation, (6) flow of traffic into facility, (7) financial arrangements for
dumping, (8) overall safety and supervision of premises, and (9) selection of
Rustin personnel to be used at the premises. 

According
to Travis, trucks entering the transfer station first rolled onto the scale,
and Waste Management handled “the billing side of that,” but that, “once they
come off the scale, they become [Rustin’s] responsibility.”  Rustin then directed the trucks’ movement and
unloading, loading of tractor trailers, and unloading at the landfill.  Travis also explained that Waste Management
periodically brought in safety and compliance personnel to perform site
inspections to ensure that Rustin complied with the state permit requirements
and was prepared for the possibility of a random audit by the Texas Commission
on Environmental Quality (TCEQ).  A
requirement that Rustin comply with governmental regulations and safety rules,
however, is not conclusive evidence that Waste Management retained some control
over Rustin’s work.  See Dow Chem. Co., 89 S.W.3d at 611 (citing Hoechst-Celanese Corp. v. Mendez, 967 S.W.2d 354, 357–58 (Tex. 1998)).

Moss
himself admitted that Rustin was in control of the facility: “They are in control
of all the trash that comes in.  They are
in control of all operations on the facility itself.  It was my understanding.”  The evidence, viewed as a whole, does not
show that Waste Management exercised control over the operative details of
Rustin’s work—specifically over the direction and control of traffic within the
transfer station—to the extent that they jury’s finding is against the great
weight and preponderance of the evidence and is manifestly unjust.  Accordingly, we hold that factually sufficient
evidence supports the jury’s verdict.  

Conclusion

          We hold that the trial court did not abuse
its discretion in submitting a right-to-control question to the jury as a
predicate to liability, and that factually sufficient evidence supports the
jury’s finding that Waste Management did not control the activities of the
trucking company employees that caused this accident.  We therefore affirm the judgment of the trial
court.

 

                                                          Jane
Bland 

                                                          Justice

 

Panel
consists of Justices Jennings, Hanks, and Bland.

 

Justice
Jennings, dissenting.











[1] Moss’s daughter, Michelle Moss, is also a party.  For ease of reference, and because her loss
of consortium claim derives wholly from Moss’s negligence claims, we refer to
Moss in the singular.  See Reagan v. Vaughn, 804 S.W.2d 463,
466 (Tex. 1990).

 





[2] The trial court used the applicable pattern jury
charge to draft the question.  See Committee
on Pattern Jury Charges of the State Bar of Texas, Texas Pattern Jury
Charges—Malpractice, Premises & Products § 66.33 (2004 ed.).