39 S.W.3d 355 (2001)
In the Interest of T.T. and K.T., The Children.
No. 01-00-00233-CV.
Court of Appeals of Texas, Houston (1st Dist.).
February 8, 2001.
*357 Judith E. Blanchard, Webster, Sheelah M. Wooten, Lake Jackson, for Appellant.
M. Elizabeth Gunn, Marie Christine Trefethern, Galveston, for Appellee.
Panel consists of Justices COHEN, TAFT, and PRICE.[*]

OPINION
COHEN, Justice.
Rebecca Tardif, the mother, and Sean Tardif, the father, appeal from a jury verdict terminating their parental rights. We affirm in part, reverse in part, and remand.

Facts
In 1997, while Sean and Rebecca were living in Corpus Christi, Texas, the Texas Department of Protective and Regulatory Services (TDPRS) was informed that Sean had abused T.T., the couple's first baby, by (1) wrapping her legs with an ace bandage on one occasion and (2) holding her upside down on another occasion. Later, TDPRS was informed that Sean had bruised T.T.'s legs, and Rebecca reported that Sean had squeezed T.T.'s foot to stop her from crawling away. Rebecca then told Sean to leave the family until he got help. TDPRS required both parents to attend counseling *358 and admits that the Tardifs participated in all the services required of them by TDPRS.
In Galveston, Texas in September 1998, TDPRS investigated the broken leg and ribs of K.T., the couple's second baby, and immediately took custody of the children. In an effort to explain K.T.'s injuries, the parents had the baby tested for brittle bone disease, but they received negative results about one month before trial. At the time of trial, in October 1999, Rebecca, who was eight months pregnant, had completed all of TDPRS's requirements to regain custody, except to leave Sean.
TDPRS's witnesses testified Rebecca knew of Sean's abuse, but either denied it or did not remove her children or herself from it. Rebecca testified she was willing to divorce Sean in order to keep her children, but she had not done so only because she was (1) unemployed, (2) poor, (3) waiting for the results of the bone-density test, and (4) pregnant.[1] During trial, Sean admitted endangering the children. Both Sean and Rebecca testified that they were willing to leave each other to preserve Rebecca's parental rights and evidence indicated that was acceptable to TDPRS until shortly before trial. Criminal charges for child abuse were pending against Sean at the time of trial.
Temporary Order Incorporating Mediator's Report
In part of Rebecca's first issue and Sean's third and fourth issues, they contend the trial judge's temporary order in this case, which was admitted in evidence upon final trial, was inadmissible hearsay and was an improper comment on the weight of the evidence. We agree.
The temporary order contained the following findings made earlier in this case by the same judge who had presided at trial:
The Court specifically finds and all parties agree that the following orders for the safety and welfare of the children are in the best interest of the children.
The Court finds pursuant to Tex.Fam. Code Sec. 262.201:
(1) there was a danger to the physical health or safety of the children which was caused by an act or failure to act of the person(s) entitled to possession and for the children to remain in the home is contrary to the welfare of the children;
(2) the urgent need for protection required the immediate removal of the children and makes efforts to eliminate or prevent the children's removal impossible or unreasonable; and
(3) notwithstanding reasonable efforts to eliminate the need for the children's removal and enable the children to return home, there is a substantial risk of a continuing danger if the children are returned home.
Thus, the jury was told that the judge had already determined that Rebecca and Sean had endangered the children and that the judge had removed the children from their possession. These findings closely resembled the questions the jury had to answer, i.e., (1) whether Sean and Rebecca had knowingly allowed the children to remain in conditions that endangered the children's physical or emotional well-being, (2) whether Sean and Rebecca had engaged in conduct that endangered the children's well-being, and (3) whether termination was in the children's best interest. See TEX.FAM.CODE ANN. §§ 161.001(1)(D), (E), (2) (Vernon Supp.2001).
The temporary order was hearsay because it was "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." TEX.R.EVID. 801(d). The declarant was the judge. A judge is prohibited from testifying *359 at the trial she presides over, and the prohibition is so strong that no objection is needed to preserve the error. TEX.R.EVID. 605.[2] The effect of admitting the judge's written statements in the order was the same as if the judge had violated Rule 605 by testifying to those statements.
The State contends that the temporary order was not excluded by the hearsay rule because of the exception in Rule 803(8)(C), which provides:
The following are not excluded by the hearsay rule ...:
Public Records and Reports. Records, reports, statements, or data compilations, in any form, of public offices or agencies setting forth: ... (C) In civil cases as to any party and in criminal cases as against the state, factual findings resulting from an investigation made pursuant to authority granted by law; unless the sources of information or the circumstances indicate lack of trustworthiness.
TEX.R.EVID. 803(8)(C).
We decline to hold that the exception in Rule 803(8)(C) would allow the admission of this temporary order. First, that rule was not meant to allow a jury to hear hearsay statements from the presiding judge about the merits of the case on trial. Even direct testimony by the presiding judge is expressly prohibited by Rule 605. It is inconceivable that the authors of the Texas Rules of Evidence would have meant to allow the presiding judge's hearsay statements into evidence while Rule 605 prohibits the judge from testifying in person. The prohibition in Rule 605 is stronger than any other in our rules of evidence; no other rule provides that objection is unnecessary to preserve the error for appellate review.
Second, our statutes, court-made rules, and judicial decisions emphatically and repeatedly prohibit Texas judges from commenting on the weight of the evidence. "... The judge shall ... deliver to the jury ... a written charge ... not expressing any opinion as to the weight of the evidence, not summing up the testimony, discussing the facts or using any argument in his charge calculated to arouse the sympathy or excite the passions of the jury..." TEX.CODE CRIM.P.ANN. art. 36.14 (Vernon Supp.2001). "The court shall not in its charge comment directly on the weight of the evidence...." TEX.R.CIV.P. 277; see Blue v. State, 41 S.W.3d 129, 132 (Tex. Crim.App. 2000) (designated for publication) (comments by judge during jury selection impairing presumption of innocence). The purpose of these rules is to protect the right to trial by jury. Maddox v. Denka Chem. Corp., 930 S.W.2d 668, 671-72 (Tex.App.-Houston [1st Dist.] 1996, no writ). "No matter what the evidence was against him, he had a right to have an impartial judge." Tumey v. Ohio, 273 U.S. 510, 535, 47 S.Ct. 437, 445, 71 L.Ed. 749 (1927). Thus, even if the hearsay rule did not bar the temporary order, it would still be objectionable as a comment on the weight of the evidence.
We hold that admitting the trial judge's temporary order was error because it violated the rule against hearsay, Rule 802, and it also violated Rule 605.
The trial judge's findings harmed Rebecca because they told the jury that the trial judge had already decided Rebecca could not protect her children, the very question the jury had to decide. Consequently, the trial judge's temporary order probably prejudiced the jury and caused the rendition of an improper judgment. TEX.R.APP.P. 44.1(a)(1).
In another part of Rebecca's first issue and Sean's fourth issue, they complain of the admission of the mediator's report, which was incorporated by reference in the judge's temporary order and *360 was attached to it as part of the same exhibit. The mediator's report stated that the mediator made the same damaging findings as the judge did in her temporary order.
Rebecca and Sean contend the mediator's report was both confidential and inadmissible under section 154.073(a) and (b) of the Texas Civil Practice and Remedies Code. See TEX.CIV.PRAC. & REM.CODE ANN. § 154.073(a), (b) (Vernon Supp.2001).[3]
The warnings and notice within the mediator's report stated
IF YOU ARE UNWILLING OR UNABLE TO PROVIDE YOUR CHILD(REN) WITH A SAFE ENVIRONMENT, YOUR PARENTAL AND CUSTODIAL DUTIES AND RIGHTS MAY BE RESTRICTED OR TERMINATED OR YOUR CHILD(REN) MAY NOT BE RETURNED TO YOU.
...
...
NOTICE IS HEREBY GIVEN THAT THE ABOVE TERMS AND CONDITIONS HAVE BEEN AGREED TO BY THE UNDERSIGNED PARTIES AND CONSTITUTE A BINDING AGREEMENT PURSUANT TO RULE 11 OF THE TEXAS RULES OF CIVIL PROCEDURE. THIS AGREEMENT SHALL BE REDUCED TO WRITING OR ATTACHED AS AN EXHIBIT TO AN ORDER TO BE PRESENTED TO THE PRESIDING JUDGE WITHIN SEVEN (7) DAYS OF THIS AGREEMENT. THE COURT MAY REVOKE AND/OR ALTER THE AGREEMENT ONLY WITH A DETERMINATION THAT IT IS NOT IN THE BEST INTEREST OF THE CHILD(REN).
Even if Sean and Rebecca waived confidentiality by agreeing that the mediator's report worked as a Tex.R.Civ.P. 11 agreement and could be submitted to the trial judge, we hold they did not waive the right under section 154.073(a) that it "may not be used as evidence against the participant in any judicial ... proceeding." Id. § 154.073(a).
This error harmed Rebecca because the mediator made the same findings as the trial judge. A normal juror would view these as judicial findings, thus making it seem that two judges had already ruled against Rebecca. Moreover, Rebecca's signature at the end of the mediator's report makes it appear she agreed with the mediator's findings, although the text of the document shows that, by signing, she agreed only to "the above terms and conditions," not to the mediator's findings.
The temporary order and the mediator's report did not harm Sean, however, because numerous witnesses, including Sean, said the same things as the findings within the two documents. He testified that he had engaged in conduct that endangered the children. An orthopedic surgeon described treating K. T.'s broken leg and ribs and said the injuries resembled child abuse. A second doctor, who reviewed the medical records, also associated the injuries with child abuse, and K.T.'s foster mother described the baby's pain and discomfort caused by wearing the body cast for six weeks. A doctor testified that a "tremendous amount of force" was used to break the child's leg. Sean's psychiatrist *361 testified that his parental rights should be terminated because, even after injuring T.T. and after undergoing extensive treatment, Sean then severely injured K.T. A psychologist agreed, emphasizing Sean's problems with frustration, anger, and impulse control. Three caseworkers testified against returning the children to either parent because of Rebecca's denial of Sean's abusive behavior. One caseworker emphasized her concern that Sean's behavior continued even after receiving extensive counseling and education. Rebecca testified Sean attended six separate sets of parenting classes after injuring T.T.; none of that kept him from injuring K.T. worse. Therefore, we hold that the admission of the temporary order and the mediator's report did not harm Sean.
We sustain these parts of Rebecca's first issue and overrule Sean's third and fourth issues. Our disposition makes it unnecessary to reach the remaining parts of Rebecca's first issue or her second issue.

Emergency Removal Affidavit and Photographs of K.T.
In Sean's second and sixth issues, he also contends the trial judge erred by admitting (1) an emergency removal affidavit containing hearsay statements about his prior conduct in Corpus Christi and (2) photographs of K.T. in a body cast. Assuming without deciding that the trial judge erred, we overrule these issues based on the above harm analysis because witnesses, including Sean, said the same things that were revealed through the affidavit and photographs.
TDPRS contends the admission of the emergency removal affidavit was offered not for the truth of its statements about Sean's prior abuse, but to prove TDPRS properly took temporary custody of the children. We disagree. The issue at trial was whether Sean's conduct justified permanent termination of parental rights. Whether TDPRS followed correct procedures was (1) not an element of TDPRS's case, (2) not a jury question, and (3) not an area of controversy opened by appellants. Nothing in the judge's comments in admitting the evidence and nothing in the jury instructions indicates the affidavit was admitted for any limited purpose other than its truth. Thus, unless an issue arises upon retrial over whether TDPRS properly took temporary custody of the children, the emergency removal affidavit should not be admitted then against Rebecca.

Motion for Continuance
Sean contends in his first issue that the trial judge erred by denying his oral motion for continuance because Rebecca went into premature labor during trial and Sean drove her to the hospital.[4] Thus, he contends he was harmed because (1) his absence during trial unfairly portrayed him as an unconcerned parent and (2) the denial of the motion so greatly favored TDPRS that it was a comment on the weight of the evidence. We follow the usual standard of review, abuse of discretion, for the denial of a continuance motion. See General Motors Corp. v. Gayle, 951 S.W.2d 469, 476 (Tex.1997) (orig. proceeding).
No continuance shall be granted "except for sufficient cause supported by affidavit, or by consent of the parties, or by operation of law." TEX.R.CIV.P. 251. The record does not contain a written motion for continuance or an affidavit. Because Sean did not comply with Rule 251, the trial judge did not abuse her discretion in denying the motion. See TEX.R.CIV.P. 251; Villegas v. Carter, 711 S.W.2d 624, 626 (Tex. 1986). Moreover, the judge made no improper comments that could be construed as comments on the weight of the evidence when ruling on the motion.
We overrule Sean's first issue.

*362 Leading Questions
In Sean's fifth issue, he contends that the guardian ad litem aligned herself with TDPRS and the trial judge erred by allowing the guardian to ask TDPRS's witnesses leading questions.
Sean's brief does not identify any particular objectionable testimony, does not show the error was preserved, and does not state why the error was harmful. Therefore, nothing is presented for review. See TEX.R.APP.P. 33.1(a), 38.1(e), (f), (h).
We overrule Sean's fifth issue.

Sufficiency of the Evidence
In Rebecca's third issue and Sean's seventh issue, they contend the evidence was legally and factually insufficient to support the jury's finding that termination of Rebecca's parental rights was in the children's best interest.[5] To terminate parental rights, the trial court must make two findings. First, the parent must have committed one of the acts prohibited under section 161.001(1) of the Texas Family Code. TEX.FAM.CODE ANN. § 161.001(1) (Vernon Supp.2001); Richardson v. Green, 677 S.W.2d 497, 499 (Tex.1984). Second, termination of parental rights must be in the child's best interest. TEX.FAM.CODE ANN. § 161.001(2); Richardson, 677 S.W.2d at 499.
The termination of parental rights involves fundamental constitutional rights. Stanley v. Illinois, 405 U.S. 645, 651, 92 S.Ct. 1208, 1212-13, 31 L.Ed.2d 551 (1972); Holick v. Smith, 685 S.W.2d 18, 20 (Tex.1985). Evidence supporting findings that terminate parental rights must be clear and convincing, not just preponderate. TEX.FAM.CODE ANN. § 161.001; In re G.M., 596 S.W.2d 846, 847 (Tex.1980). The clear and convincing standard of proof is placed on the State in order to create a higher burden of proof, due to the severity and permanence of termination. Harris v. Herbers, 838 S.W.2d 938, 941 (Tex.App.-Houston [1st Dist.] 1992, no writ). This standard requires more proof than the preponderance of the evidence standard in civil cases, but less than the reasonable doubt standard in criminal cases. G.M., 596 S.W.2d at 847; In re J.N.R., 982 S.W.2d 137, 141 (Tex.App.-Houston [1st Dist.] 1998, no pet.). The clear and convincing standard is the degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations. G.M., 596 S.W.2d at 847; J.N.R., 982 S.W.2d at 141.
The jury found subsections 161.001(1)(D), (E) and (2) of the Texas Family Code supported terminating Rebecca's parental rights. TEX.FAM.CODE ANN. §§ 161.001(1)(D), (E), (2). The jury could have rationally reached these findings because evidence indicated Rebecca (1) knew Sean had abused T.T. even before K.T. was born; (2) continually denied Sean's abusive tendencies; (3) was in the home when Sean endangered the children; (4) continued to allow Sean to be around the children after he abused them; (5) continued to live with Sean pending trial; and (6) could not adequately protect or provide financially for the children. See J.N.R., 982 S.W.2d at 142 (holding that (1) even after he knew his parental rights were in jeopardy, the father continued to engage in conduct that endangered the physical or emotional well being of the child, i.e., criminal activity resulting in repeated arrests, and (2) termination was in the child's best interest).
We hold the evidence was legally sufficient to support the judgment against Rebecca.
Rebecca contends the evidence is factually insufficient to support the judgment *363 because she did everything required to regain custody, except to leave Sean. We need not decide this issue because of our disposition of Rebecca's first issue. Our resolution of that issue grants Rebecca the same relief, a new trial, that she would get if we were to find the evidence against her factually insufficient.
We affirm the judgment terminating Sean's parental rights, reverse the judgment terminating Rebecca's parental rights, and remand the cause.
NOTES
[*] The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.
[1] There was no need for Rebecca to leave or divorce Sean after September 28, 1998 in order to protect the children because the children were out of their home, in foster care, during that time.
[2] "The judge residing at the trial may not testify in that trial as a witness. No objection need be made in order to preserve the point." Id.
[3] § 154.073(a). Except as provided by Subsections (c) and (d), a communication relating to the subject matter of any civil or criminal dispute made by a participant in an alternative dispute resolution procedure, whether before or after the institution of formal judicial proceedings, is confidential, is not subject to disclosure, and may not be used as evidence against the participant in any judicial or administrative proceeding. § 154.073(b). Any record made at an alternative dispute resolution procedure is confidential, and the participants or the third party facilitating the procedure may not be required to testify in any proceedings relating to or arising out of the matter in dispute or be subject to process requiring disclosure of confidential information or data relating to or arising out of the matter in dispute.

Id. (emphasis added).
[4] Rebecca testified by video deposition. She does not seek reversal because of the denial of her motion for continuance.
[5] Sean's seventh issue contests the sufficiency of evidence for terminating Rebecca's parental rights, but not his own. His prayer, however, contends the evidence is legally insufficient as to him. We address the sufficiency of evidence only in regard to Rebecca because this is the issue Sean has briefed. See TEX. R.APP.P. 38.1(e), (f), (h). Thus, we overrule Sean's seventh issue.