Opinion issued August 10, 2006













In The
Court of Appeals
For The
First District of Texas




NO. 01-05-00529-CV




TRIUMPH TRUCKING, INC., Appellant

V.

SOUTHERN CORPORATE INSURANCE MANAGERS, INC.
D/B/A TRANSPORTATION INSURANCE MANAGERS, Appellee




On Appeal from the 157th District Court
Harris County, Texas
Trial Court Cause No. 2002-52148-A




O P I N I O N
          Appellant, Triumph Trucking, Inc., appeals the take-nothing judgment rendered
by the trial court after a jury found in favor of appellant. In two issues, Triumph
contends that the trial court erred in disregarding the jury’s verdict and in admitting
evidence of the trial court’s pretrial turnover of interpleaded funds to Triumph. We
affirm. 
BACKGROUND
          Appellant, Triumph Trucking, Inc. (Triumph), provided trucking services out
of its Houston, Texas location. Appellee, Southern Corporate Insurance Managers,
Inc., d/b/a Transportation Insurance Managers (TIM), is an independent insurance
agency that was seeking commercial automobile liability insurance coverage for
Triumph. Other defendants at trial, but not parties to this appeal, included Universal
Insurance Exchange (UIE), a Dallas-based insurance company, and Overland
Insurance Company (Overland), which served as Managing General Agent for UIE
and issued binders for coverage on UIE’s behalf. Overland was owned by, and was
effectively the same entity as, Thomas Gregory Corless. 
          Triumph’s commercial automobile insurance carrier elected not to renew
Triumph’s insurance. TIM, as Triumph’s insurance agent, secured a proposal for the
coverage from UIE through Overland, which issued a binder for the insurance. 
Corless filed documents, as required by the Federal Motor Carrier Safety
Administration (Safety Administration), showing that Triumph had the commercial
automobile insurance required by the Safety Administration. 
          The total one-year premium for the insurance was $458,800. Triumph paid the
required 25% down payment of $114,700 and the first monthly premium of $38,233
to TIM, which forwarded the payments, less its 10% commission, to UIE. Thereafter,
Triumph paid six additional monthly premiums. However, because of a problem with
UIE’s automated billing system, TIM did not receive invoices after the initial
payment and, as a result, did not forward those later payments to UIE. 
          In February 2002, questions arose regarding the status of Triumph’s coverage. 
In April 2002, TIM learned that it had not forwarded Triumph’s premium payments
to UIE. However, TIM did not send the additional premium payments because of the
coverage question and because a copy of the policy had never been received. During
this same time period, UIE cancelled the insurance filings with the Safety
Administration, and Triumph ceased its trucking operations. Also, during the period
that Triumph was supposed to be covered by UIE, Triumph settled four claims
totaling $41,527 and paid $12,115 in attorney’s fees in connection with those claims. 
          TIM interpleaded $206,460 in state district court as disputed funds and named
Triumph, UIE, Overland, and Guardian as defendants/claimants. Of the premiums
paid by Triumph, TIM retained $38,234 as a commission. Triumph filed an
application for turnover of the interpleaded funds, asserting that the funds were
premiums paid by Triumph for insurance coverage that was never issued. The trial
court granted the application and signed an order for turnover of the funds. 
          Triumph filed a counterclaim against TIM and crossclaims against UIE,
Overland, and Guardian, alleging breach of contract, breach of fiduciary duty,
violation of the insurance code and the deceptive trades practices act, and fraud. The
case was tried to a jury. The jury questions and responses at issue in this appeal are
Question Nos. 4, 14, and 16. Question No. 4 asked, 
Did TIM fail to comply with its agreement, if any, to obtain
insurance coverage for Triumph?
 
Answer “Yes” or “No”

The jury answered “Yes.” Other questions regarding liability were Nos. 7, 8, 9, 11,
12, and 13. Question No. 7 asked whether any unfair or deceptive act or practice of
TIM, UIM, or Corless caused damage to Triumph. Question No. 8 asked whether
TIM or UIE engaged in any false, misleading, or deceptive act or practice that
Triumph relied on to its detriment and that was a producing cause of damages to
Triumph. Question No. 9 asked whether TIM, UIE, or Corless engaged in any
unconscionable action or course of action that was a producing cause of damages to
Triumph. Question No. 13 asked whether the negligence, if any, of TIM or Corless
proximately caused damage to Triumph. The jury answered “Yes” to each of these
questions. Question No. 11 asked whether TIM complied with its fiduciary duty to
Triumph. The jury answered “No.” The jury also answered “No” to Question No. 12,
which asked whether TIM or UIE committed fraud against Triumph.
          Question No. 14 was predicated as follows: 
If you answered . . . “Yes” to Question Nos. 7, 8, 9, 12, or 13 as
to TIM, . . . or “No” to Question No. 11, then answer the following
question. Otherwise, do not answer the following question. 

Question No. 14 then asked, 
 
For each party found by you to have caused the damages, if any,
to Triumph, find the percentage of responsibility of those named below? 

The jury found TIM 30%, UIE 10%, and Corless 60% responsible. Question No. 16
was predicated as follows:
 
If you answered assigned [sic] a percentage to either TIM or UIE
in Question No. 14, then answer the following question. Otherwise, do
not answer the following question. 

Question No. 16 then asked, 
 
What sum of money, if any, if paid now in cash, would fairly and
reasonably compensate Triumph for its damages, if any, that resulted
from the transaction in question? 
 
Do not include in your answer any amount that you find Triumph
could have avoided by the exercise of reasonable care. 
 
Do not include in your answer any amount for damages that were
caused solely by Coreless [sic], if any. 
 
Answer in dollars and cents for damages, if any.
 
Answer: ____________ 

The jury answered “$50,349.44.” 

          Triumph filed a motion for entry of judgment on the verdict, requesting
recovery on the jury’s finding of breach of contract (Question No. 4), damages
(Question No. 16), and attorney’s fees as found by the jury (Question No. 20:
$145,000 plus $17,500 for appeals). TIM filed a motion for judgment
notwithstanding the verdict (JNOV), a motion to disregard certain jury findings, and
an objection to any findings made pursuant to rule 279 of the Texas Rules of Civil
Procedure. The trial court did not specifically rule on either of these motions, but
signed a final judgment ordering that Triumph take nothing by its suit. 
DISCUSSION
Take-Nothing Judgment
          In its first issue, Triumph contends that the trial court erred in disregarding the
jury’s verdict and entering a take-nothing judgment on its claims. Triumph asserts,
“The true issue on appeal is whether more than a scintilla of competent evidence
supports” the jury’s damages finding in Question No. 16, which included both
causation and damages. 
          TIM responds that the court’s charge to the jury did not include questions on
causation or damages for breach of contract. TIM contends that there is no evidence
in the record to support deemed findings on those omitted elements, arguing that
Triumph was not damaged by TIM’s failure to secure insurance coverage, but, rather, 
received a financial windfall by profiting from its continued trucking operation and
recovering over $200,000 of the $382,335 it paid in premiums. 
          In a jury trial, the trial court submits disputed fact issues to the jury. Lafarge
Corp. v. Wolff, 977 S.W.2d 181, 186 (Tex. App.—Austin 1998, pet. denied). When
the evidence conclusively establishes an issue, the trial court need not submit that
issue to the jury. Transit Enterps., Inc. v. Addicks Tire & Auto Supply, Inc., 725
S.W.2d 459, 462 (Tex. App.—Houston [1st Dist.] 1987, no writ). Generally, a JNOV
can be rendered only when there is no evidence to support one or more of the jury’s
findings that are necessary to liability. See, e.g., Tiller v. McClure, 121 S.W.3d 709,
713 (Tex. 2003). When an independent ground of recovery is not submitted to the
finder of fact, the plaintiff may prevail on that ground only if the issue has been
conclusively established. Tex. R. Civ. P. 279; T.O. Stanley Boot Co. v. Bank of El
Paso, 847 S.W.2d 218, 222–23 (Tex. 1992). 
          Rule 279 of the Texas Rules of Civil Procedure provides, with respect to
omitted elements of a ground of recovery: 
When a ground of recovery or defense consists of more than one
element, if one or more of such elements necessary to sustain such
ground of recovery or defense, and necessarily referable thereto, are
submitted to and found by the jury, and one or more of such elements
are omitted from the charge, without request or objection, and there is
factually sufficient evidence to support a finding thereon, the trial court,
at the request of either party, may after notice and hearing and at any
time before the judgment is rendered, make and file written findings on
such omitted element or elements in support of the judgment. If no such
written findings are made, such omitted element or elements shall be
deemed found by the court in such manner as to support the judgment.

Tex. R. Civ. P. 279. 
          Triumph made no objection to the submission of Question No. 16—the sole
damages question in the charge, nor did Triumph object to the omission of a specific
question regarding causation and damages relating to breach of contract. Question
No. 16 was predicated on Question No. 14 (the proportionate-responsibility question)
which, in turn, was predicated on Questions No. 7 (unfair or deceptive act or
practice), No. 8 (false, misleading, or deceptive act or practice and producing cause),
No. 9 (unconscionable action and producing cause), No. 11 (fiduciary duty), and No.
13 (negligence and proximate cause). Question No. 14 was not predicated on
Question No. 4 (breach of contract); therefore the jury’s answer in Question No. 16
is not a finding of damages resulting from TIM’s breach of contract.
          Triumph argues that Question No. 16 is an “all encompassing” damages
question that also finds causation. Triumph further argues, in a footnote, that the
predicate to the question does not exclude the breach-of-contract claim. Triumph
asserts that the predicate “merely directs the jury to answer the damages question only
if certain conditions are satisfied,” citing H.E. Butt Grocery Co. v. Bilotto, 985
S.W.2d 22, 24 (Tex. 1998). Triumph’s statement is correct, but it is misapplied. 
Under the predicate to Question No. 16, the condition to be satisfied before answering
the question is a finding of a percentage of liability in Question No. 14, which is
predicated on liability findings in Question Nos. 7, 8, 9, 11, 12, or 13. Question No.
16 is not referable to Triumph’s claim for breach of contract. Thus, there is no jury
finding on causation or damages resulting from TIM’s breach of contract. 
          Under rule 279, the parties are considered to have agreed to waive a jury trial
on the unsubmitted elements and to have submitted those issues to the trial court for
resolution. First State Bank, Morton v. Chesshir, 634 S.W.2d 742, 747 (Tex.
App.—Amarillo 1982, writ ref’d n.r.e.). If the trial court does not make written
findings, the court of appeals will deem the omitted elements found in support of the
judgment. Gulf States Utilities Co. v. Low, 79 S.W.3d 561, 565 (Tex. 2002). 
However, when the trial court renders a JNOV, it demonstrates that no finding was
made on the omitted element. Washam v. Hughes, 638 S.W.2d 646, 648–49 (Tex.
App.—Austin 1982, writ ref’d n.r.e.). In such a case, the losing party may prevail on
appeal only by showing that it established the omitted element conclusively. Id. at
649. Thus, the existence of more than a scintilla of evidence of some of the elements
will not defeat the JNOV.
          Because the trial court in this case rendered a JNOV and did not make written
findings of fact, we must determine whether Triumph established, as a matter of law,
that it suffered damages caused by TIM’s breach of its agreement with Triumph. 
          Triumph does not argue that it conclusively established causation and damages
relating to its breach-of-contract claim. Rather, it argues that “TIM’s retention of
commissions in the amount of $38,233.50” and the “attorney’s fees of $12,115.04 in
connection with” claims Triumph settled are more than a scintilla of evidence to
support causation and damages for breach of contract. 
          TIM contends that Triumph did not suffer any damages, but instead, reaped a
windfall because it was able to operate for seven months, earning gross receipts of
approximately $1.5 million per month and a 10 to 12 % profit. In addition, TIM
argues that Triumph received the $206,000 from the registry of the court, resulting
in Triumph’s payment of only $176,208 during a time period (seven months) when
full premiums for its insurance would have been $267,458. 
          The issue of damages was vigorously contested in the trial court, and both
Triumph and TIM produced evidence to support their contentions. Therefore,
Triumph did not conclusively establish either causation or damages. Accordingly,
we overrule Triumph’s first issue. 
Evidence of received funds
          In its second issue, Triumph contends that the trial court erred in admitting
evidence of the trial court’s pretrial turnover of interpleaded funds to Triumph
because, according to Triumph, the funds came within the collateral source rule. 
Triumph also argues that the admission of the evidence was a violation of rule 605
of the Texas Rules of Evidence, which prohibits a judge from testifying in a trial over
which the judge is presiding. See Tex. R. Evid. 605. We review a trial court’s
evidentiary rulings for abuse of discretion. Owens-Corning Fiberglas Corp. v.
Malone, 972 S.W.2d 35, 43 (Tex. 1998). 
          The collateral source rule generally prevents a tortfeasor from benefitting from
payments made to a plaintiff by parties other than the tortfeasor. Taylor v. Am.
Fabritech, Inc., 132 S.W.3d 613, 626 (Tex. App.—Houston [14th Dist.] 2004, pet.
denied). Under this rule, a defendant may not offer evidence of payment from a
collateral source and may not take an offset for such payments. Id. The rule is an
exception to the one-satisfaction rule. See Brown v. Am. Transfer & Storage Co., 601
S.W.2d 931, 936 (Tex. 1980) (“If payment is within the collateral source rule, the
principle forbidding more than one recovery for the same loss is not applicable.”). 
          Triumph argues that the court’s ruling was a violation of the collateral source
rule because the funds came from the court. Triumph states, “It cannot be disputed
that the source of the funds delivered to Triumph was the trial court.” 
          In fact, the source was not the trial court. TIM placed the funds in the registry
of the court. Therefore, the source of the funds was TIM. The trial court merely
returned those funds to Triumph. Furthermore, the trial court ruled that the evidence
of the turnover was admissible to show that Triumph believed that it was not insured
after contradictory testimony by Triumph regarding whether it believed that it was
insured. 
          We hold that the collateral source rule did not apply to these funds. 
          With regard to rule 605, that rule provides, “The judge presiding at the trial
may not testify in that trial as a witness. No objection need be made in order to
preserve the point.” Tex. R. Evid. 605. The Texas Court of Criminal Appeals has
construed the rule to prohibit not only a judge’s direct testimony, but also “the
functional equivalent of witness testimony.” Hammond v. State, 799 S.W.2d 741,
746 (Tex. Crim. App. 1990).


 
          Triumph relies on In re T.T., 39 S.W.3d 355 (Tex. App.—Houston [1st Dist.]
2001, no. pet.), to support its contention that the trial court violated this rule. In T.T.,
a parental-rights-termination case, the trial court admitted into evidence a temporary
order signed by the court in which the court made findings adverse to the defendants
on issues very similar to those that the jury was to determine. Id. at 358. This Court
stated, “The effect of admitting the judge’s written statements in the order was the
same as if the judge had violated Rule 605 by testifying to those statements.” Id. 
          In this case, the documents to which Triumph objected were Triumph’s
application for turnover and an unsigned order prepared by Triumph for the judge’s
signature. We conclude that neither of these documents was the functional equivalent
of testimony by the judge in violation of rule 605. 
          We hold that the trial court did not abuse its discretion in admitting evidence
of the turnover of the impleaded funds to Triumph. Accordingly, we overrule
Triumph’s second issue. 
CONCLUSION
          We affirm the trial court’s judgment. 
 
 
                                                             Sam Nuchia
                                                             Justice

Panel consists of Chief Justice Radack and Justices Taft and Nuchia.