

## Fourth Court of Appeals

### San Antonio, Texas

### MEMORANDUM OPINION

No. 04-13-00039-CV

**IN THE INTEREST OF E.B**. and A.B., Children

From the 73rd Judicial District Court, Bexar County, Texas
Trial Court No. 2005-CI-01739
Honorable Renée F. McElhaney, Judge Presiding

Opinion by:     Rebeca C. Martinez, Justice

Sitting:          Marialyn Barnard, Justice
                 Rebeca C. Martinez, Justice
                 Patricia O. Alvarez, Justice

Delivered and Filed:  June 4, 2014

AFFIRMED

Timothy Berban appeals the trial court's Order in Suit Affecting Parent-Child Relationship rendered in the underlying modification proceeding. We affirm the judgment of the trial court.

### BACKGROUND

Timothy Berban and Leticia Berban are the parents of two children, E.B. and A.B. Timothy and Leticia were divorced in 2005. In the Final Decree of Divorce, the parties were named joint managing conservators of their two daughters; Leticia was given the exclusive right to designate the primary residence of the children within Bexar County. In 2006, Timothy remarried and has since had two more children.

Five years later, Timothy filed a Petition to Modify Parent-Child Relationship. In the petition, Timothy sought, among other things, to have the exclusive right to determine the

children's primary residence. Thereafter, the trial court[1] signed temporary orders granting Timothy the right to determine the children's primary residence pending trial on the Petition to Modify.

The parties proceeded to trial in June 2012. Leticia's attorney sought to exclude any evidence regarding the temporary orders. The trial court ruled that all evidence of and relating to the temporary orders be excluded.

At trial, Timothy testified at length as to why he should be permitted to designate the children's primary residence. In his opinion, his daughters would be better suited living primarily with him because: the children already spend eighty percent of their time with him as opposed to their mother; Leticia moved a lot and caused the children to enroll in new schools; the children received an excessive number of tardies at school resulting from their mother dropping them off late; the girls stay up too late at night when with their mother; Leticia was inconsistent in giving the children their medication; the children eat too much fast food when with their mother; and Leticia posted disparaging remarks about him and his wife on Facebook. In addition, Timothy testified that since their divorce in 2005, Leticia has had several boyfriends, one of whom smoked around the children and accidently burned one of the girl's arms with a cigarette. Another boyfriend had a record of driving while intoxicated and allegedly drove a vehicle with the girls in it even though his driver's license had been revoked.

Timothy testified that Leticia does not respect or follow the court's order for possession times, and often failed to pick up the children at 6:00 p.m., which was her designated pick up time. On one occasion, she called or texted him at 8:15 p.m. after the girls were showered and in bed, and demanded that the girls be woken up and brought to her. Timothy testified that he refused to

---

[1] The Honorable David Berchelmann, formerly presiding judge of the 37th Judicial District Court, Bexar County, Texas, signed the temporary orders.

do so because it was a school night and the girls needed their rest. Leticia called the police. According to Timothy, Leticia appeared with bloodshot, dilated eyes and was acting erratically. The police allowed the girls to stay with Timothy for the night.

Timothy testified that the girls are currently living with him and that he would like to maintain the status quo. He stated that he pays all of the medical bills and other incidentals for the girls.

On cross-examination, Timothy admitted that: one of his daughters suffered a severe sunburn while in his possession; Leticia found inappropriate text messages and images on his twelve year-old daughter's mobile phone; and his three year-old autistic son once escaped from his house and was found at a neighbor's house while in the care of Timothy and his second wife, Nicole Berban.

Several witnesses testified in support of Timothy. Nicole Berban testified that she is a stay-at-home mom and that she and Timothy have two sons, ages five and three. Nicole helps the girls with their homework, volunteers for their school activities, including Girl Scouts, and cooks meals for them. She too testified that Leticia is often late and that Leticia neglected to pick up the girls when she was supposed to. According to Nicole, Leticia also occasionally failed to exercise her periods of possession, which appeared to upset the girls.

Gina Berban, Timothy's mother, testified that she lives with Timothy and Nicole. She too stated that Leticia is often late meeting the girls at the bus stop after school. According to Gina, Nicole helps the girls with their homework more than either Timothy or Leticia do.

Michelle Berban, Timothy's sister, testified that she spends a lot of time with Timothy and his family. She stated that Timothy and Nicole are loving towards and supportive of all their children, and that Timothy is just as involved with the children as Nicole.

Shannon Mantrom, a friend of Nicole's, testified that they met through their daughters' Girl Scout troop. Mantrom had observed Timothy to be a very hands-on father. Mantrom had not noticed any problems with Timothy and Nicole having a special-needs child in their home. Mantrom believed that Nicole had done a good job of ensuring the girls spent time with their mother.

During her testimony, Leticia acknowledged that Timothy had started spending more time with the girls in the last year, but disagreed that the girls spent as much time with Timothy as Timothy and Nicole claimed they did. Leticia claimed that Timothy is too busy with his work to spend time with the girls and that Nicole, who she described as a "super mom," was really the one "running the show." Leticia countered the assertion that she allowed her daughters to be exposed to her undesirable boyfriends, stating that she knew her last boyfriend for four months before he moved in with her, and that he only drank alcohol once in front of the girls.

Contrary to Timothy's assertion that she feeds junk food to her daughters, Leticia stated that the girls eat spinach, field greens, and baked salmon when they are with her. Leticia agreed that she did not take the girls to their medical and dental appointments, but only because she did not have the requisite insurance information from Timothy. When asked why she did not go to the emergency room when one of her daughters was taken there by Timothy, Leticia explained that she was not notified about the emergency until after Timothy and her daughter had left the emergency room.

Leticia testified that she allowed Timothy to have extra time with the girls because of her work schedule, explaining that it was better for them to be with their father and stepmother than in daycare. Leticia also explained that she is currently able to get the girls to school on time because she lives closer to the school now. She stated that Timothy and Nicole have also been late picking up the girls "plenty of times." She further stated that the girls are doing well in their

current schools. Leticia felt that it was in the best interest of the children that she establish their primary residence because she is their mother and she spends a great amount of time with them; she takes unpaid time off of work to spend time with the girls; she attends to their needs; they spend quality time together; and she helps them with their homework. Leticia felt that the girls should not continue to live primarily at Timothy's home because Timothy has demonstrated that he is too busy to spend time with the girls, with the exception of the year prior to trial when he began to attend their school events.

Sylvia De La Hoya, Leticia's sister, testified that Leticia is a very good mother, despite the fact that she is sometimes late. She described Timothy as an "arrogant" and "sarcastic" person. De La Hoya was aware that the girls were currently residing primarily with their father and had been for quite some time.

At the conclusion of the trial, the jury determined that Leticia be designated the parent with the exclusive right to determine the residency of the children. Timothy filed a motion to set aside the jury verdict due to improper and prejudicial jury argument and a motion for judgment non obstante veredicto. Subsequently, the trial court entered an order following the jury's recommendation and denying Timothy's motion to change the designation of the person that has the exclusive right to determine the residency of the children.[2] Both parents were appointed joint managing conservators; Leticia was awarded the exclusive right to designate the children's primary residence, and Timothy was awarded possession and access beyond the extended standard possession order. In addition, the trial court ordered that Leticia not have an unrelated male spend the night in her residence while in possession of the children. The trial court issued findings of fact and conclusions of law in which it found that: the parties had failed to effectively cooperate

---

[2] A trial court may not contravene a jury verdict that determines which joint managing conservator has the exclusive right to designate the primary residence of the child. *See* TEX. FAM. CODE ANN. § 105.002(c)(1)(D) (West 2014).

with each other in co-parenting their children; the children were adequately bonded with both parents as well as with their stepmother; and both parents are able to adequately oversee the children's health, welfare, and education. Timothy filed a motion for new trial, which was denied. Timothy timely appealed.

## DISCUSSION

On appeal, Timothy complains that the trial court erred in excluding evidence of the temporary orders and in denying the motion for new trial. He also contends that the jury's verdict in denying the petition to modify the parent-child relationship is against the great weight of the evidence.

### *Standard of Review*

Trial courts have wide discretion regarding custody, control, possession, support, and visitation matters involving children. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *Holley v. Holley*, 864 S.W.2d 703, 706 (Tex. App.—Houston [1st Dist.] 1993, writ denied). We review a trial court's decision on custody, control, possession, and visitation matters for an abuse of discretion; and we reverse a trial court's order only if we determine, from reviewing the record as a whole, that the trial court's decision was arbitrary and unreasonable. *Patterson v. Brist*, 236 S.W.3d 238, 239-40 (Tex. App.—Houston [1st Dist.] 2006, pet. dism'd). We also apply the abuse of discretion standard to review a trial court's determination of conservatorship and denial of a motion for new trial. *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007) (determination of conservatorship); *see Cliff v. Huggins*, 724 S.W.2d 778, 778-79 (Tex. 1987) (denial of motion for new trial). We view the evidence in the light most favorable to the trial court's decision and indulge every legal presumption in favor of its judgment. *Holley*, 864 S.W.2d at 706. We will reverse only if the trial court abused its discretion by acting without reference to any guiding rules or principles. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990).

Legal and factual insufficiency challenges are not independent grounds for asserting error in custody determinations, but are relevant factors in determining whether the trial court abused its discretion. *Niskar v. Niskar*, 136 S.W.3d 749, 753 (Tex. App.—Dallas 2004, no pet.). To determine if the trial court abused its discretion, we consider whether the trial court had sufficient evidence on which to exercise its discretion and erred in its exercise of that discretion. *In re H.N.T.*, 367 S.W.3d 901, 903 (Tex. App.—Dallas 2012, no pet.). There is no abuse of discretion if some evidence of a substantive and probative character supports the decision, and we will not substitute our judgment for that of the trial court. *Holley*, 864 S.W.2d at 706.

## I.       *Improper Jury Argument*

Timothy first contends that a new trial should have been granted based on improper argument by Leticia's counsel. Specifically, Timothy complains that counsel stated in opening argument that Leticia presently had the right to designate the children's primary residence. Timothy argues that this statement was false, because pursuant to the temporary orders, he had the exclusive right to designate the primary residence, not Leticia. Further, due to the pretrial order in limine, Timothy was prevented from explaining to the jury that he presently had the right to designate the children's primary residence. Timothy maintains the jury was confused as to which parent had the right to designate the primary residence at the time of trial, thus causing them to render an improper verdict.

We disagree that the argument was improper. The jury was given a charge that provided: "Should the August 29, 2005 Divorce Decree, that designates Leticia Berban the conservator who had the exclusive right to determine the primary residence of the children, be modified to designate Timothy Berban as the conservator who has the exclusive right?" In opening, counsel was speaking in reference to the divorce decree when he stated his client currently had the right to determine the children's residence. Because counsel's statement was made in the context of the

divorce and the jury was charged on the 2005 divorce decree, we cannot conclude that the statement was false or that it constituted an improper jury argument.

In any event, the record reflects that any confusion the jury may have suffered was ameliorated by subsequent trial references to the fact that the children were presently residing with Timothy. Our review of the record reveals six instances in which the jury was informed that the children primarily resided with their father. Accordingly, we hold that the trial court did not abuse its discretion in denying the motion for new trial based on the alleged improper jury argument.

## II. *Exclusion of Evidence*

Timothy next argues that the trial court erred in excluding evidence of the temporary orders. We review a trial court's decision to admit or exclude evidence under an abuse of discretion. *Bufkin v. Bufkin*, 259 S.W.3d 343, 351 (Tex. App.—Dallas 2008, pet. denied). The trial court stated that the concern about the temporary orders was that the jury not be left with the impression that there had already been a judicial determination in terms of possession. In *In re T.T.*, 39 S.W.3d 355 (Tex. App.—Houston [1st Dist.] 2001, no pet.), a parental termination case, the reverse situation was examined. There, the trial court admitted evidence of temporary orders which informed the jurors that the children would be subjected to a substantial risk of danger if they were returned home to their birth parents. *Id*. at 358. The appellants/birth parents complained that the temporary orders constituted an improper comment on the weight of the evidence. *Id.* The appellate court agreed, and explained that the parents were harmed by the evidence because it told the jury that the trial judge had already decided that the parents had endangered their children and that the judge had removed the children from their possession, findings that "closely resembled the questions the jury had to answer." *Id*. The appellate court held that the temporary orders probably prejudiced the jury and caused the rendition of an improper judgment. *Id*. at 359.

In our case, the seminal question before the jury was which parent gets the exclusive right to designate the children's primary residence. The temporary orders, which gave Timothy that right, could have had the effect of swaying the jury—of informing them that a judge had already determined that Timothy was the more fit parent to designate the primary residence.[3] Thus, admission of the temporary orders would have been prejudicial and erroneous. *See id*. at 358-59. Accordingly, we hold that the trial court did not abuse its discretion when it excluded all evidence of the temporary orders.

### III. *Sufficiency of the Evidence to Support Jury Verdict*

Finally, Timothy argues that the jury's verdict in denying his petition to modify the parent-child relationship and change the designation of the person that has the exclusive right to determine the residency of the children is against the great weight of the evidence. Again, an allegation of factual sufficiency is not an independent ground of error in a family law case, but is a relevant factor in assessing whether the trial court abused its discretion. *See In re D.S*., 76 S.W.3d 512, 516 (Tex. App.—Houston [14th Dist.] 2002, no pet). In determining whether evidence is factually sufficient to support a jury's verdict, we examine the entire record, considering the evidence in favor of and contrary to the challenged finding, and set aside the jury's verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam); *In re K.M.T*., 415 S.W.3d 573, 578 (Tex. App.—Texarkana 2013, no pet.).

The Family Code provides, in relevant part, that an order establishing conservatorship may be modified if modification would be in the best interest of the child and "the circumstances of the

---

[3] The Supreme Court case relied upon by Timothy also stands for the proposition that it is inappropriate to present a trial court's factual findings to a jury tasked with answering the same question. *See In re M.S*., 115 S.W.3d 534, 538 (Tex. 2003).

child, a conservator, or other party affected by the order have materially and substantially changed." TEX. FAM. CODE ANN. § 156.101(a)(1) (West 2014); *In re V.L.K.*, 24 S.W.3d 338, 342 (Tex. 2000). A court's primary consideration shall always be the best interest of the child. TEX. FAM. CODE ANN. § 153.002 (West 2014); *V.L.K.*, 24 S.W.3d at 342. In a modification case, the movant must prove his case by a preponderance of the evidence. TEX. FAM. CODE ANN. § 105.005 (West 2014); *In re Z.B.P.*, 109 S.W.3d 772, 780-81 (Tex. App.—Fort Worth 2003, no pet.).

Here, the jury was presented with conflicting evidence from two parents who both loved their children. The jury was the sole judge of the witnesses' credibility and the weight to be given to their testimony. *See City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005). During closing, Timothy's counsel argued that the following facts demonstrated that it was in the girls' best interest that they primarily live with Timothy: Leticia was always late; she had once moved the girls to New Braunfels for a period of time, she had once let her boyfriend with a revoked driver's license and DWI record drive the girls around; and she had once called the police to get the girls out of bed when it was her time with them even though she was late picking them up. Each of these instances was, however, countered by Leticia.

Leticia testified that the chronic school tardiness was no longer a problem now that she lived closer to the children's schools. She also explained that she was sometimes late in picking up the children because of her work schedule or traffic, both reasonable explanations. In addition, she also preferred to allow the children to spend more time with their father if she was going to be late rather than to enroll them in daycare. She had lived in the same home—which was very close to both Timothy's house and the girls' schools—for the past four years, and gave no indication that she intended to move the children from their present home or school. She also denied that her former boyfriend had as many DWI charges as Timothy alleged, and she also discontinued her

relationship with the boyfriend. As to the police incident, Leticia explained that she had informed Timothy closer to 6:00 p.m.—her designated pick up time—that she was running late, and that she did not believe the girls were asleep when she called the police.

After hearing all of the evidence, the jury determined that Leticia should be the parent with the exclusive right to designate the primary residence of the children. We cannot agree that the evidence supporting the jury's verdict is factually insufficient. *See, e.g., In re M.J.*, No. 09-09-00355-CV, 2010 WL 3042438, at *2-3 (Tex. App.—Beaumont Aug. 5, 2010, no pet.) (mem. op.) (holding that jury's finding regarding right to designate primary residence was not against the greater weight and preponderance of the evidence where jury heard conflicting evidence about whether granting such right to mother or father would serve the child's best interest). There was ample evidence before the jury that Leticia loves her children and cares for them, and attends their extracurricular activities and helps them with homework just as Timothy testified he did. After examining all the evidence in the record, we conclude the jury's verdict denying Timothy's petition to change the designation of the person who has the exclusive right to determine the residency of the children is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Dow Chem. Co.*, 46 S.W.3d at 242. Accordingly, we hold that the trial court did not abuse its discretion in entering a judgment consistent with the jury's verdict on the issue of designating the children's primary residence.

## CONCLUSION

We overrule Timothy's issues on appeal and affirm the judgment of the trial court.

Rebeca C. Martinez, Justice