**Opinion issued December 3, 2020**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-19-00424-CV

———————————

**ARGELIO RAUL VILLARREAL SALDANA, Appellant**

**V.**

**VICTORIA LYNN VILLARREAL, Appellee**

**On Appeal from the 428th District Court**
**Hays County, Texas[1]**
**Trial Court Case No. 18-2100**

---

[1]     The Texas Supreme Court transferred this appeal to this Court from the Court of Appeals for the Third District of Texas. *See* TEX. GOV'T CODE § 73.001 (authorizing transfer of cases between courts of appeals).

## MEMORANDUM OPINION

Appellant, Argelio Raul Villarreal Saldana ("Saldana"), proceeding pro se, challenges the trial court's final decree in a suit for divorce brought by appellee, Victoria Lynn Villarreal ("Villarreal"). In four issues, Saldana asserts that the trial court erred in denying his motion for a continuance, erred in not sending the parties to mediation, erred in its property division, and erred in not enforcing the decree. Saldana also asserts various claims against his trial counsel.

We affirm.

## Background

The record filed in this appeal is limited. The record shows that the parties were married on November 15, 2014. On September 10, 2018, Villarreal brought a petition for divorce against Saldana. The trial court set a hearing for temporary orders, on which the parties passed. On February 21, 2019, the trial court signed an agreed "Order on Provisions Dealing with Sale of Marital Residence," in which the parties agreed to the terms of selling their house and agreed that Saldana would occupy the house until it was sold. On April 2, 2019, Saldana answered Villarreal's suit and brought a counter-petition for divorce, essentially mirroring that of Villarreal.

At trial, Villarreal appeared with counsel, and Saldana appeared through his counsel. Saldana's counsel moved for a continuance, stating: "Your Honor, before

2

we proceed, I do have to ask for a continuance, for the record. I'm not sure where my client is." Villarreal's counsel objected, noting that Saldana had told Villarreal that he did not intend to appear. Villarreal testified that her counsel's statement was correct. The trial court denied the motion for continuance. Saldana's counsel also noted that the parties had "talked about mediation." After Villarreal stated that mediation would not be productive, trial continued.

Villarreal requested a divorce, testifying that she and Saldana were married on November 15, 2014, that the marriage had become unsupportable, and that she and Saldana had ceased living together on September 10, 2018. She noted that there were no children of the marriage, and she requested that the trial court make a just and right division of the property. She asked that the home furnishings be distributed to each party in accordance with a previous agreement. She sought her personal effects, funds in certain accounts subject to her sole control, her car, and associated debt. She sought one-half of Saldana's retirement accounts. She asked the trial court to award Saldana his two cars. She asked that the trial court order each party to assume his or her own respective debts, with the exception of a certain credit card account, which they agreed to split.

Villarreal sought sole authority to negotiate the sale of the marital residence and to sign a sales contract. She testified that Saldana had been uncooperative with their real estate agent and that he had rejected an offer that was $9,000.00 over the

3

listing price. The trial court admitted various text messages and emails from Saldana to Villarreal and to the agent, in which Saldana refused to allow the house to be shown "regardless of what the court says." The trial court also admitted evidence that Villarreal had paid a $9,182.99 down payment on the house from a separate personal account that she had prior to marriage. She asked the trial court to designate that amount as her separate property and requested a credit against the sales proceeds.

In its final decree, the trial court noted that Saldana, although duly notified of trial, did not appear and that he appeared through his counsel. The trial court awarded each party all household furnishings, jewelry, and personal effects in his or her possession, or subject to his or her sole control, as agreed. It awarded each party one-half of all pension or retirement accounts existing by reason of Saldana's employment, including two named accounts. It awarded Saldana all cash and other accounts subject to his sole control and his cars. It awarded Villarreal all cash and accounts subject to her sole control and her car. It ordered that each party assume his or her respective debts, with the exception of the credit card account, to be split as agreed. It confirmed that Villarreal contributed $9,182.99 of her separate property toward the purchase of the residence, and it ordered reimbursement from the sales proceeds, prior to division.

## Continuance and Counsel

In his first issue, Saldana argues that the trial court erred in denying his motion for a continuance. He also asserts that his trial counsel: (1) "unlawfully represented" him at trial on April 9, 2019 because counsel withdrew from representing him on April 4, 2019; (2) failed to present certain arguments at trial; and (3) entered "agreements" with Villarreal's counsel at trial that were not "constitutional."

We review a trial court's denial of a motion for continuance for an abuse of discretion. *Grace v. Duke*, 54 S.W.3d 338, 343 (Tex. App.—Austin 2001, pet. denied). A trial court abuses its discretion if it acts without reference to guiding rules or principles. *Id.* A trial court is not required to grant a motion for continuance merely because a party is unable to attend trial. *Zeifman v. Nowlin*, 322 S.W.3d 804, 812 (Tex. App.—Austin 2010, no pet.).

A trial court may not grant a continuance "except for sufficient cause supported by affidavit, or by consent of the parties, or by operation of law." TEX. R. CIV. P. 251. "A motion for continuance must be in writing, state the specific facts supporting the motion, and be verified or supported by an affidavit." *Serrano v. Ryan's Crossing Apts.*, 241 S.W.3d 560, 564 (Tex. App.—El Paso 2007, pet. denied); *see Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986); *In re T.T.*, 39 S.W.3d 355, 361 (Tex. App.—Houston [1st Dist.] 2001, no pet.). When a party fails to comply with the rule, the trial court does not abuse its discretion in denying the

motion.  *Villegas*, 711 S.W.2d at 626; *Zeifman*, 322 S.W.3d at 812; *In re T.T.*, 39 S.W.3d at 361.

Here, the appellate record shows that Saldana's counsel made an oral motion at trial for a continuance, unsupported by affidavit or sworn testimony, to which Villarreal's counsel objected.  Because Saldana did not comply with the requirements of rule 251, we hold that the trial court did not abuse its discretion in denying his motion for continuance.  *See* TEX. R. CIV. P. 251; *Zeifman*, 322 S.W.3d at 812; *In re T.T.*, 39 S.W.3d at 361 (holding that trial court did not err in denying oral motion for continuance).

With respect to his claim that his counsel represented him at trial despite having withdrawn, Saldana does not direct us to any point in the record in which his trial counsel filed a notice of withdrawal.  Although he attaches to his brief various correspondence with counsel, we may not consider documents attached to briefs as exhibits when, as here, they are not included in the record.  *See Till v. Thomas*, 10 S.W.3d 730, 733 (Tex. App.—Houston [1st Dist.] 1999, no pet.).

Saldana's additional claims are not supported by cogent argument or citations to authority.  *See* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.").  Because these issues are inadequately briefed, nothing is presented for our review.  *See A.C. v. Tex. Dep't of Family & Protective Servs.*, 577 S.W.3d

6

689, 709 (Tex. App.—Austin 2019, pet. denied); *Fuentes v. Zaragoza*, 555 S.W.3d 141, 170–71 (Tex. App.—Houston [1st Dist.] 2018, no pet.).

We overrule Saldana's first issue.

## Mediation

In a portion of his second issue, Saldana argues that the trial court erred in rendering a decree without first "direct[ing] counsel [and] parties to hold mediation as directed in the Feb. 21st 2019 temporary orders for resolution of division of property." He asserts that the order "mandated mediation."

The Texas Family Code provides that, "[o]n the written agreement of the parties or on the court's own motion, the court *may* refer a suit for dissolution of a marriage to mediation." TEX. FAM. CODE § 6.602 (emphasis added). Thus, a trial court is not required to order parties to mediate. Further, here, Saldana does not direct us to any point in the record in which the trial court "mandated mediation" or ordered the parties to attend mediation. The trial court's February 21, 2019 Order on Provisions Dealing with Sale of Marital Residence does not mention mediation.

We again note that Saldana has attached a number of documents to his brief. We must hear and determine a case based on the record as filed; we may not consider documents attached to briefs as exhibits when, as here, they are not included in the record. *See Till*, 10 S.W.3d at 733.

We overrule this portion of Saldana's second issue.

7

## Division of Property

In his third and fourth issues, Saldana asserts that the "division of property from the marital household has not been equally distributed and disagreements in regards to personal and separate property are still unresolved." He asserts that the trial court erred in "awarding only a 50/50 split" of his financial accounts and not also awarding a "50/50 split" of Villarreal's accounts.

The division of a community estate in divorce must be "just and right, having due regard for the rights of each party." *Bradshaw v. Bradshaw*, 555 S.W.3d 539, 543 (Tex. 2018); *see* TEX. FAM. CODE § 7.001. "Just" means "[l]egally right; lawful; equitable." *Bradshaw*, 555 S.W.3d at 543. "Right" means "[t]hat which is proper under law, morality, or ethics." *Id.* "Due regard" simply means the "[a]ttention, care, or consideration" that is "[j]ust, proper, regular, and reasonable" *Id.* Equitable division does not necessarily mean "equal" division. *Lynch v. Lynch*, 540 S.W.3d 107, 128 (Tex. App.—Houston [1st Dist.] 2017, pet. denied.).

A number of factors may be relevant to a "just and right" division, including the parties' relative income or earning capacity, needs and financial condition, fault in ending the marriage, physical condition, age, separate estates, education, and the nature of the property to be divided. *Murff v. Murff*, 615 S.W.2d 696, 699 (Tex. 1981). Ultimately, "the court is to do complete equity," having due regard for the spouses' obligations and for the "probable future necessities of all concerned."

*Bradshaw*, 555 S.W.3d at 543 (internal quotations omitted). Because the standards for dividing a community estate involve the exercise of sound judgment, a trial court must be accorded much discretion in its decision. *Id.* On appeal, corrections are made only when an abuse of discretion is shown. *Id.*

Here, Saldana asserts that "property was not equally divided." He asserts that the parties were awarded property of disparate value, and he discusses certain pieces of property, or groups of property, to which he assigns various values. He asserts that the trial court awarded Villarreal "half of [his] Fidelity accounts, but did not grant [Saldana] half of [Villarreal's accounts], equating to a wrong-unjust court decision due to the split not equating 50/50." He asks this Court to remand the case to the trial court for a "just and fair decision."

Because the trial court, in its decree, awarded each party numerous sums, accounts, and items that it deemed either subject to their sole control or divided by agreement, the value of the community estate, or the value of the portions divided between the spouses, is not discernible from the record. *See Bush v. Bush*, 336 S.W.3d 722, 741 (Tex. App.—Houston [1st Dist.] 2010, no pet.). And, Saldana does not support his assertions with citations to the record. *See id.* Without this information, we cannot determine the percentages of the community assets that were awarded to each spouse. *See id.* Accordingly, nothing is presented for our review. *See* TEX. R. APP. P. 38.1(i); *Bush*, 336 S.W.3d at 741.

Saldana further asserts that, although Villarreal used her separate property for the down payment on the marital home, there was an agreement between them that such would be "in exchange for" Saldana thereafter making house payments from his income. He complains that "this prior agreement was [not] discussed during [trial]." Because Saldana did not present this argument to the trial court, the issue is waived. *See* TEX. R. APP. P. 33.1 (providing that, as prerequisite to presenting complaint for appellate review, record must show that complaint was made to trial court by timely request, objection, or motion and that trial court ruled, either expressly or implicitly, or refused to rule and complaining party objected to refusal); *Ganesan v. Vallabhaneni*, 96 S.W.3d 345, 352 (Tex. App.—Austin 2002, pet. denied) ("Because appellant did not present this argument to the trial court, he cannot make it on appeal.").

We overrule Saldana's third and fourth issues.

### Enforcement

In the remaining portion of his second issue, Saldana asserts that the trial court erred in "not enforc[ing] the division of marital property as she ordered" in the final decree and in not enforcing the parties' "agreement on May 10th" "for the wedding ring and for the non-pursuit of [Saldana's] Fidelity Retirement Accounts." He "requests the enforcement of the agreements made on May 10, 2019."

10

The matter before this Court is Saldana's appeal from the trial court's final decree issued on April 9, 2019. A party affected by a decree of divorce providing for a division of property "may request enforcement of that decree by filing a suit to enforce . . . in the court that rendered the decree." TEX. FAM. CODE § 9.001(a). The court that rendered the decree retains the power to enforce the decree's property division. *Id.* § 9.002. A suit to enforce, including a request for clarification, is a separate lawsuit from the original divorce proceeding. *In re Turner*, 500 S.W.3d 641, 643 (Tex. App.—Austin 2016, no pet.). Enforcement of either the decree or agreements in this case requires the resolution of underlying factual disputes that we cannot determine on the record before us. *See Hopkins v. Hopkins*, No. 03-03-00629-CV, 2006 WL 1126222, at *13 (Tex. App.—Austin Apr. 27, 2006, pet. denied) (mem. op.). They must be raised in the trial court rather than for the first time on appeal. *See id.*; *see also* TEX. R. APP. P. 33.1.

We overrule the remaining portion of Saldana's second issue.

## Conclusion

We affirm the trial court's decree.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Lloyd and Kelly.

11