NUMBER 13-02-044-CV


 

COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


IN THE INTEREST OF J.L., A CHILD

 


On appeal from the County Court at Law No. 4 


of Fort Bend County, Texas.

 


MEMORANDUM OPINION



Before Justices Hinojosa, Yañez, and Wittig


Memorandum Opinion by Justice Wittig (1)


 

 Appellant, Bettina Chavez, appeals an adverse jury verdict and judgment
terminating her parental relationship with her minor son, J.L., and appointing Chris
Edwards, the biological father, as sole managing conservator. This cause is on remand
to this Court from the Texas Supreme Court for a factual sufficiency review. In re J.L., 127
S.W.3d 911 (Tex. App.-Corpus Christi 2004), rev'd, 163 S.W.3d 79, 80-81 (Tex. 2005). 
Because we find the evidence to be factually sufficient, we also review appellant's other
ten issues. We affirm the judgment of the trial court.

 I. Background

 On review, the Texas Supreme Court found the evidence supporting termination of
the parent-child relationship to be legally sufficient. In the Interest of J.L., a Child 163
S.W.3d 79, 80-81 (Tex. 2005). Both the Supreme Court's opinion and our prior opinion
delineate the background and many of the significant facts underlying the jury's findings,
both supporting and not supporting the termination of parental rights of appellant. Id. at
85-88; see also In re J.L., 127 S.W.3d at 914-15.

 II. Factual Sufficiency

 In proceedings to terminate the parent-child relationship, the petitioner must
establish one or more of the acts or omissions enumerated under subdivision (1) of chapter
161.001 of the family code and must also prove that termination is in the best interest of
the child. Tex. Fam. Code Ann. § 161.001(1), (2) (Vernon Supp.2006); Richardson v.
Green, 677 S.W.2d 497, 499 (Tex. 1984). A list of factors that may be considered by the
court in determining whether the termination is in the best interest of the child is found at
section 263.307 of the family code. See Tex. Fam.Code Ann. § 263.307 (Vernon 2005);
see also Holley v. Adams, 544 S.W.2d 367, 372 (Tex. 1976). 

 The parent-child relationship is recognized and protected by law to such a degree
that it is of federal constitutional dimensions. Santosky v. Kramer, 455 U.S. 745, 758-59
(1982) (holding that the parent-child relationship is "far more precious than any property
right."). The termination of parental rights is final and ends all legal ties between the parent
and child, except the child's right of inheritance. Tex. Fam. Code Ann. § 161.206(b)
(Vernon 1996); Holick v. Smith, 685 S.W.2d 18, 20 (Tex. 1985). Because termination of
parental rights is such a drastic remedy and is of such weight and gravity, due process
requires the petitioner to justify termination by a heightened burden of proof of "clear and
convincing evidence." See Tex. Fam. Code Ann. § 161.001 (Vernon 1996); In re A.D.E.,
880 S.W.2d 241, 245 (Tex. App.-Corpus Christi 1994, no writ).

 When the standard of proof at trial is elevated, the standard of appellate review is
also elevated. Southwestern Bell Tel. Co. v. Garza, 164 S.W.3d 607, 627 (Tex. 2004); see
also In re J.F.C., 96 S.W.3d 256, 266-67 (Tex. 2002). In a factual sufficiency review, we
must give due consideration to evidence that the factfinder could reasonably have found
to be clear and convincing. In re J.F.C., 96 S.W.3d at 266. Our inquiry must be "whether
the evidence is such that a factfinder could reasonably form a firm belief or conviction
about the truth of the State's allegations." Id. We should consider whether disputed
evidence is such that a reasonable factfinder could not have resolved that disputed
evidence in favor of its finding. Id. If, in light of the entire record, the disputed evidence
that a reasonable factfinder could not have credited in favor of the finding is so significant
that a factfinder could not reasonably have formed a firm belief or conviction, then the
evidence is factually insufficient. Id. 

 The trial court found that the Department had proven by clear and convincing
evidence that Bettina had (1) knowingly placed or knowingly allowed J.L. to remain in
conditions or surroundings which endangered his physical or emotional well-being; and
(2) engaged in conduct or knowingly placed J.L. with persons who engaged in conduct that
endangered J.L.'s physical or emotional well-being. See Tex. Fam. Code Ann. §
161.001(1)(D), (E). The trial court also found that the termination of Bettina's parental
rights was in the best interest of J.L. See Tex. Fam. Code Ann. § 161.001(2). Thus the
necessary findings were made to terminate parental rights. See Tex. Fam. Code Ann. §
161.001(1)-(2). 

 Appellant, sometimes referred to as "Bettina," testified that Frank Chavez, her
husband, would fly off the handle, lose his temper, and be too rough with Hallie and J.L.,
his stepchildren. She and Frank had arguments about how he disciplined Hallie and J.L. 
Frank's rough discipline included spanking J.L. with a belt two or three times, once leaving
a red mark on the child's hand. In another incident, Frank angrily lifted Hallie by one arm,
threw her into the seat of the car, and later either kicked or pushed her into the residence
with his foot following an incident at a store. This incident resulted in a physical
confrontation between Frank and Bettina with Frank shoving Bettina. Hallie was in Frank's
care when she met her untimely demise. Her death was ruled a homicide. 

 In another earlier episode prior to Hallie's death, Bettina delayed getting Hallie
medical treatment for many days. Once treated, Hallie was diagnosed as having had a
stroke. 

 Before Hallie died, Bettina delayed treatment for five days because she was worried
about getting in trouble with CPS. She did not call 911 until the child had vomited multiple
times, turned blue, and stopped breathing. Hallie previously had asthma, a stroke,
seizures, E. coli bacterial infection and obviously required more than normal medical
attention.

 Hallie's autopsy and other medical evidence showed she died as a result of
complications from blunt trauma to the abdomen while in Frank's care. Hallie had several
internal injuries of varying ages. Mature fibrous adhesions in the small intestine were older
than six weeks. The adhesions suggested previous injury or infection. She had blood in
the abdominal tissues. Her ribs were fractured approximately fourteen to thirty days before
death. Her back had a yellowish bruising believed to have been incurred five to seven
days prior to death. More recent bruises on her back were a few days old or less. There
was evidence of hemorrhages in several different places in Hallie's abdomen of recent
origin. There were also hemorrhages in the liver and around the pancreas, right kidney
and adrenal gland. These hemorrhages were in the area of her perforated intestine.

 Appellant denied Frank was violent, although she admitted she hit and probably
kicked Frank.

 According to expert testimony, Hallie's homicide was cause by blunt force trauma
to the stomach equivalent to a fall from a ten-story building. Appellant's expert disagreed
because there were no marks or bruises on the child's stomach but conceded that Hallie
suffered some traumatic event to her stomach which caused her death.

 The guardian ad litem recommended appellant's parental rights be terminated
based upon the autopsy report and the previous investigation surrounding Hallie's stoke
in 1998.

 We also review evidence that does not support the jury's finding that Bettina
endangered J.L. under sections 161.001(1)(D) and (E). Again, we will not reiterate all of
the evidence found in the two prior opinions involving appellant.

 Contrary evidence suggested Hallie's stomach injury leading to her death could
have been caused by the administration of CPR. Frank maintained Hallie fell out of bed
and drank bath water. She also had a fall down the stairs. Two prior CPS investigations
concerning the belt spanking and Hallie's stroke could not determine whether or not the
child had been abused. Hospital records indicated Hallie's stroke and seizures were not
caused by abuse. After Hallie's death, there were no bruises on Hallie's abdomen. Two
doctors testified Bettina may not have been alerted to Hallie's need for medical care before
her death. Chris, J.L.'s natural father, was friendly toward Bettina and expressed his desire
that Bettina still see J.L. Chris also thought Bettina was a good mother and met the
children's emotional needs.

 Viewing the record in the light most favorable to the jury's verdict and recognizing
that the jury is the sole arbiter when assessing the credibility and demeanor of witnesses,
we conclude that a reasonable factfinder could form a firm belief or conviction that Bettina
(1) knowingly placed or knowingly allowed J.L. to remain in conditions or surroundings
which endangered his physical or emotional well-being; and (2) engaged in conduct or
knowingly placed J.L. with persons who engaged in conduct that endangered J.L.'s
physical or emotional well-being. Tex. Fam. Code Ann. § 161.001(1)(D), (E). In light of
the entire record, the disputed evidence that a reasonable factfinder could not have
credited in favor of these finding is not so significant that a factfinder could not reasonably
have formed a firm belief or conviction in the findings made and thus the clear and
convincing standard is met. In re J.F.C., 96 S.W.3d at 266-67.

 We also evaluate the evidence in support of the jury's finding that the termination
of appellant's parental rights was in J.L.'s best interest. Tex. Fam. Code Ann. § 161.001(2). 
The jury charge instructed that some factors to consider in determining the best interest
of the child were: the desires of the child; the emotional and physical needs of the child
now and in the future; the emotional and physical danger to the child now and in the
future; the parenting ability of the individuals seeking custody; the programs available to
assist those individuals to promote the best interest of the child; the plans for the child by
those individuals or by the agency seeking custody; the stability of the home or proposed
placement; the acts or omissions of the parent that may indicate that the existing
parent-child relationship is not a proper one; and any excuse for the acts or omissions of
the parent. In addition to the above evidence recited, as well as that recited in the
Supreme Court's opinion, we observe the evidence infra. 

 Appellant continued to live with Frank, the man accused of killing Hallie. The family's
case manager testified that J.L. was in a safer environment by being placed with his father
Chris, rather than Bettina. Chris lived with his grandmother, as he did for most of his life. 
His family was close, and he had many relatives living nearby. Appellant's psychologist
testified that Bettina did not have much family support. Appellant was estranged from her
father, had lost her mother to cancer, found no support from her drug-addicted brother, and
had many other relatives living out of state. After ending a brief affair with another man,
appellant dated Frank two months and moved in with him. Evidence indicated that
appellant had financial difficulties after Hallie's death and had unstable living arrangements
that caused her to move often. She also admitted hitting Frank. Sometimes Frank went
"berserk."

 We also consider evidence that does not support the jury's finding that the
termination of appellant's parental rights was in the best interest of J.L. After Hallie's
death, appellant completed a recommended psychological evaluation, attended parenting
classes, and went to therapy sessions with a psychologist. Chris did not attend the
parenting classes recommended by the department because he felt he did not need them. 
Appellant followed the department's instructions. At the time of trial, Bettina was
employed with a law firm and was attending school part-time where she was studying to
become a paralegal. Testimony indicated appellant loved her children very much. Prior
to Hallie's death, appellant had worked at a grocery store for four-and-a-half years. 

 Chris testified that he has had at least six different jobs between 1995-2001, was
employed only about 50% of that time, and was unemployed at the time of trial. He
testified that he loses his jobs when his sickle-cell disease makes him sick for three to four
days at a time, and he is typically sick from the disease about four to five times a year. 

 Chris's child support payments to Bettina for Hallie and J.L. were in arrears. He had
missed at least six months of payments in 1999. He also is required to pay child support
for two older daughters that he had with another woman. Chris testified that it was good
for J.L.'s emotional well-being to be allowed to see his mother in the future. Chris testified
that he would allow her to visit J.L. as long as Frank was not present. Chris's testimony
indicated that he had lived with his grandmother his entire life, except for the one year he
lived with Bettina, during which time he was unemployed and Bettina paid the bills. Chris
contributed to pay at least half of his grandmother's bills. Chris put J.L. to bed at 10 or 11
p.m. at age 5. In the past Chris sold LSD. He was arrested but the charges were dropped.

 In spite of this contrary evidence, when considering all the evidence in the light most
favorable to the verdict, a factfinder could reasonably form a firm belief or conviction that
the termination of Bettina's parental rights was in J.L.'s best interest. In light of the entire
record, the disputed evidence that a reasonable factfinder could not have credited in favor
of this finding is not so significant that a factfinder could not reasonably have formed a firm
belief or conviction in the findings made. In re J.F.C., 96 S.W.3d at 266-67. Therefore, the
evidence, under a clear and convincing standard, is factually sufficient to support the jury's
findings that Bettina endangered J.L. under sections 161.001(1)(D),(E) and that the
termination was in J.L.'s best interest.

III. Constitutional Challenge

 Appellant argues three issues addressing the timing of the trial of the termination
case before the trial of the criminal cases. In her fourth issue, she contends the time limits
set for disposition of the termination case are unconstitutional as applied. In her fifth issue,
she contends the family code provision allowing the trial of the criminal case prior to the
termination case is unconstitutional as applied. And, in her sixth issue, she argues there
is no evidence or insufficient evidence to support a finding that it was in the best interest
of the child to try the termination case prior to the criminal case. Both appellant and the
State argue these issues together. Accordingly, we also discuss the issues together.

 Appellant argues the family code's time restrictions of one year plus one 180 day
extension to try her termination case worked to her serious detriment. See Tex. Fam. Code
Ann. § 263.401. She was thus forced to trial in the termination case ahead of the criminal
case against her. She contends that the purpose of the family code section, that is, to
prevent a child from languishing in foster care, is not applicable. Appellant concludes that
she was denied due process under the United States and Texas Constitution. Appellant
asserts that CPS urged the trial court to try the termination case first and CPS caused
much of the delay. Appellant and Frank objected to the trial of the civil case first. In
several "best interest" hearings, CPS offered no evidence. See Tex. Fam. Code Ann. §
161.2011. According to appellant, the unrestricted use of "best interest" is unconstitutional.

 Appellant contends it was unfair to try the termination case ahead of the criminal
case for several reasons. Both Frank and appellant were penalized for not fully
participating with CPS due to the pending criminal charges. The jury reacted adversely
because of the criminal charges and possible invocation of the Fifth Amendment by Frank. 
This assertion in turn was repeatedly used by the State against appellant. Appellant's
arrest, incarceration, and refusal to talk with authorities on advice of counsel was also used
against her. Finally, appellant was forced to choose to help herself in the civil case by
testifying, which could possibly hurt her criminal trial, but if she refused to testify in the civil
case, her Fifth Amendment claims would jeopardize the civil case.

 The State counters that appellant did not challenge the constitutionality of the family
code in the trial court. Furthermore, no motion for continuance with these complaints was
filed. When a party moves for a continuance, civil procedure rule 251 requires the party
to show sufficient cause by affidavit, consent of the parties, or operation of law as support
for her motion. Tex. R. Civ. P. 251. A motion for continuance must be sworn and in writing.
Id.; Villegas v. State, 711 S.W.2d 624, 626 (Tex. 1986). Appellant did file one written
motion for continuance on December 22, 2000. In the motion appellant complained that
she was mislead by CPS into believing the termination case was only against Frank and
then in November, CPS went after her for termination. She was surprised and unprepared
for trial. No mention was made of any of the complaints appellant argues today.

 As argued by the State, constitutional challenges not raised in the trial court are
generally waived. In re K.C.M., 4 S.W.3d 392, 394 (Tex. App.-Houston [1st Dist.] 1999,
pet denied, overruled in part, on other grounds, In re C.H. 89 S.W.3d. 17, 24 (Tex. 2005); 
see Tex. R. App. P8. 33.1. Furthermore, once it was clear that the trial judge intended to
proceed with a trial, appellant should have moved for a continuance or otherwise objected. 
Lemons v. EMW Mfg. Co.,747 S.W.2d 372, 373 (Tex. 1988). An issue not preserved is
not before the appellate court for review. Id. Rather than preserving error, if any,
appellant announced "ready" when the case was actually called to trial June 28, 2001. 
Accordingly, issues four, five, and six are overruled.

IV. Ad Litem Testimony

 Appellant next contends the trial court erred by allowing the guardian ad litem to
testify over appellant's objection. She argues that the family code requires the ad litem to
interview J.L. and each individual considered likely to have significant knowledge of the
child's history and condition. Tex. Fam. Code Ann. § 107.002(b). Appellant describes
several claimed omissions in the ad litem's performance. For example, he did not review
a Christmas video, talk with appellant's therapist or some of the grandparents, or read the
Texas Children's Hospital records. Further, the ad litem attended only two supervised
visits at CPS. Near the conclusion of the ad litem's testimony, appellant moved to
disqualify the ad litem as a witness on grounds of bias and prejudice. In support of this
issue, appellant cites only general propositions that termination proceedings require strict
scrutiny. See, e.g., In re B.L.D., 56 S.W.3d 203, 210, (Tex. App.-Waco 2001, rev'd on
other grounds, In re B.L.D. 113 S.W.3d. 340 (Tex. 2003)) (natural right existing between
parents and their children is of constitutional dimensions); In re T.T., 39 S.W.3d 355, 359
(Tex. App.-Houston [1st Dist.] 2001, no pet.) (admission into evidence of trial judge's
findings in temporary orders harmed appellant because they told the jury that the trial judge
had already decided Rebecca could not protect her children). Appellant cites no authority
to support her argument that the ad litem was unqualified to testify or that alleged bias was
a basis for striking his testimony.

 The State counters that our review of the trial court's evidentiary rulings is based
upon the abuse of discretion standard. In re I.V., 61 S.W.3d 789, 795 (Tex. App.-Corpus
Christi 2001, no pet.) (decision whether to admit evidence rests within the discretion of the
trial court) (citing E.I. du Pont Nemours & Co. v. Robinson, 923 S.W.2d 549, 558 (Tex.
1995)). We agree. The only articulated statutory basis for the inclusion or exclusion of the
guardian at litem's testimony is found in the family code. See Tex. Fam. Code Ann. § 
107.002 (c)(6) (providing for ad litem's testimony except as provided by subsection (d)). 
The ad litem was statutorily entitled to testify regarding his recommendations concerning
the actions that he considered to be in the best interest of the child, including his reasons. 
Id. We note that the statute prevents an attorney appointed as attorney ad litem and
guardian ad litem from testifying. See Tex. Fam. Code Ann. § 107.002(d). This exclusion
is inapplicable to the guardian ad litem in this case. The trial court did not abuse its
discretion by its ruling based upon the objection made. Similarly the trial court was within
its discretion in denying appellant's second motion to strike testimony based upon alleged
bias and prejudice. In re I.V., 61 S.W.3d at 795. This issue is overruled. 

 V. Evidence of Bond Condition

 In appellant's eighth issue, she argues error because the trial court admitted
evidence concerning violation of her bond condition providing that she have no contact with
Frank Chavez. In a multifarious argument, appellant first argues Detective Sodolak was
improperly questioned about this bond condition. However, the trial court sustained the
objection and instructed the jury to disregard the question and what the answer might have
been.

 When appellant was called as a witness, she was asked if she had abided by all
court orders affecting her. One of the parties objected that the bond condition prohibiting
appellant from seeing her husband was illegal. As the State points out (and as noted by
the trial judge), this was an attempted collateral attack on the conditions of the bond in the
criminal case. Appellant thus waived her complaint on this appeal by not objecting to the
bond condition in the criminal case. See Smith v. State, 993 S.W.2d 408, 410 (Tex.
App.-Houston [14th Dist.] 1999, pet. ref'd) (by failing to object to the conditions when they
were made, appellant failed to preserve error for appeal). 

 In the last part of this wide-ranging argument, appellant states she objected to the
fact the bond was not a court order and was not signed by a judge. The objection was
overruled. Appellant was asked whether she violated a court order and she answered yes. 
She stated she violated "a condition of my bond." The State also argued in final argument,
apparently without objection, that appellant had demonstrated what she thought of court
orders. Appellant again cites the general proportion that strict scrutiny applies in
termination cases. See In re T.T., 39 S.W.3d at 359. However, the case cited by
appellant is distinguished from the instant case by the fact it involved court findings, given
to the jury, addressing the same questions to be answered by the jury. Id. We find no
merit in this issue and it is overruled. 

 VI. Expert Testimony

 Appellant objected to the trial court, by way of a motion in limine, about any expert
opinion relating to Hallie unless and until such evidence was found admissible under
Daubert/Robinson, after a hearing outside the presence of the jury. Appellant then listed
twenty-three items as subjects of expert opinion to be excluded ranging from the time and
age of rib fractures, estimated time of contusions, cause of death as blunt force trauma,
age of bruises, adhesions, estimate of the amount of force necessary to injuries, and age
of adhesions. This portion of the limine motion was overruled. Because a trial court's
ruling on a motion in limine preserves nothing for review, a party must object at trial when
the testimony is offered to preserve error for appellate review. Greenberg Traurig of New
York, P.C. v. Moody, 161 S.W.3d 56, 91 (Tex. App.-Houston [14th Dist.] 2004, no pet.)
(citing Hartford Acc. & Indem. Co. v. McCardell, 369 S.W.2d 331, 335 (Tex.1963)). 

 A docket sheet entry indicated Judge Stansbury concluded, after a hearing, that Dr.
Moore, the attending medical examiner, was qualified to testify. At trial, appellant objected
to a question whether a merry- go-round fall thirty-five to thirty-seven days prior to Hallie's
death could cause the rib fractures in question. Voir dire examination by Jimmy Phillips,
counsel for Frank, showed Moore had not done research or experimentation on causes of
rib fractures. The witness did not read material or periodicals regarding merry-go-round
falls and falling down stairs. Moore did read more general articles regarding fall-related
injuries, used her experience, attended conferences and read literature but had no specific
experience with merry-go-round cases. She did have experience with two or three stair
falls. On re-direct Moore stated she had performed over one hundred and eleven pediatric
autopsies, was involved with pediatric pathology for over six years, has understanding and
knowledge concerning the tensile strength of pediatric bones, particularly ribs, and could
quantify the amount of force necessary to break a two and a half year old child's ribs.

 Rule 702 of the Texas Rules of Evidence permits a witness qualified as an expert
by knowledge, skill, experience, training, or education to testify on scientific, technical, or
other specialized subjects if the testimony would assist the trier of fact in understanding the
evidence or determining a fact issue. See Tex. R. Evid. 702. Whether an expert is
qualified is, under Rule 104(a), a preliminary question to be decided by the trial court.
Gammill v. Jack Williams Chevrolet, Inc., 972 S.W.2d 713, 719 (Tex. 1998). The offering
party must demonstrate that the witness "possess[es] special knowledge as to the very
matter on which he proposes to give an opinion." Id. A trial court's acceptance of a
witness's qualifications as an expert is reviewable for an abuse of discretion. Id. 

 As noted, Dr. Moore was qualified as an expert and her qualifications were not
challenged by appellant. Furthermore, we agree with the trial court that the medical
examiner possessed special knowledge by both background and experience as to the very
matter upon which she opined. See id.; Volkswagen of Am., Inc. v. Ramirez, 159 S.W.3d
89, 904 (Tex. 2004) (expert testimony is unreliable if it is not grounded "in the methods and
procedures of science" and is no more than "subjective belief or unsupported
speculation."). As a pathologist, Dr. Moore could reliably base her opinion concerning
bone fractures upon her examination, background, studies and experience. We see no
merit to the argument that a forensic pathologist need have a sub speciality in merry-go-rounds accidents or stair falls in order to testify to the pathological consequences of such
a fall.

 Appellant further complains about testimony by Dr. Moore concerning what an adult
would have to do to inflict Hallie's injuries, the ageing of injuries, bruising, and the
mechanism necessary to cause fibrous adhesions. We find no corresponding objections
by appellant. Error, if any, was not preserved for our review. See TEX. R. APP. P. 33.1; 
Rogers v. Dep't of Family and Protective Servs., 175 S.W.3d 370, 377 (Tex. App.-Houston
[1st Dist.] 2005, pet dis'm w.o.j.) (even if testimony had been inadmissible, party did not
preserve error because he did not object to this testimony at trial--only counsel for his
co-defendant objected). This issue is overruled. 

VII. Broad Form Submission

 Appellant contends the trial court erred by submitting multiple grounds for
termination in a broad form question. She argues it is impossible to know if at least ten
jurors agreed on a single ground of termination as required by the rules of civil procedure. 
See Tex .R. Civ. P. 292. Because of heightened scrutiny required in termination cases,
due process requires strict compliance with the rule and appellant suggests there is
evidence the same 10 jurors may not have agreed. (2) Appellant cites In re B.L.D.,, 56
S.W.3d 203, 215-219 (Tex. App-Waco 2001), rev'd, 113 S.W.3d. 340 (Tex. 2003). 
However, the Supreme Court reversed this case and specifically held that no charge error
was preserved for review. Id. at 350-351. The Waco opinion in turn had relied upon
Crown Life Ins. Co. v. Casteel, 22 S.W.3d. 378, 387-90. (Tex. 2000) (holding that a single
broad-form liability question incorporating multiple theories of liability is harmful error 
when appellate court cannot determine whether the jury based its verdict on an improperly
submitted invalid theory.) Here, both theories were valid, so Crown Life is inapposite. See
id. As the State suggests, broad form submission has been specifically approved by our
highest court. Tex. Dep't of Human Servs. v. E.B., 802 S.W.2d 647, 649 (Tex. 1990)
(charge in parental rights cases should be the same as in other civil cases; case also
involved answers of 10 jurors). We also observe that the jury charge specifically instructed
that the same 10 jurors must answer every question if their verdict was less than
unanimous. Jurors are generally presumed to have followed the trial court's instructions.
Lewis v. United Parcel Service, Inc., 175 S.W.3d 811, 817 (Tex. App.-Houston [1st Dist.]
2004, pet. denied) (in the absence of evidence to the contrary, we must presume that a
jury followed a trial court's instructions.) We overrule this issue. 

 VIII. Right to Unanimous Verdict

 Next, appellant says a less-than-unanimous verdict deprives her of due process
under the Fourteenth Amendment. According to appellant, unanimity should be required
because a termination case is more like a criminal case than a civil case. Moreover,
juvenile proceedings require a unanimous verdict. See Tex. Fam. Code Ann. § 54.03(c).
While appellant does cite authority that she is generally entitled to due process protection
and that termination cases involve the removal of rights, she furnishes no authority that she
is entitled to a unanimous jury verdict in a termination case. We recognize that the
involuntary termination of parental rights implicates fundamental constitutional rights. 
Stanley v. Illinois, 405 U.S. 645, 651 (1972); In re G.M., 596 S.W.2d 846, 846 (Tex.1980). 
 The State points out that the Texas Constitution specifically provides for less than
unanimous verdicts in civil cases. Tex. Const. art. 5, § 13. "In trials of civil cases in the
District Courts, nine members of the jury, concurring, may render a verdict, but when the
verdict shall be rendered by less than the whole number, it shall be signed by every
member of the jury concurring in it." Id. The rules of civil procedure likewise provide for
less than unanimous verdicts. Tex. R. Civ. P. 292. Furthermore, the United States
Supreme Court has held that a unanimous twelve person verdict is not required in a state,
non-capital criminal jury trial. Apodaca v. Oregon, 406 U.S. 404, 411 (1972). "In terms of
this function we perceive no difference between juries required to act unanimously and
those permitted to convict or acquit by votes of 10 to two or 11 to one." Id. Given that
even certain criminal trials do not require a unanimous verdict, we do not perceive it as our
duty to graft an exception to the Texas Constitution or stray from United States Supreme
Court precedent. We overrule this issue.

IX. Effective Assistance of Counsel

 This issue regarding notice of appeal and affidavit of indigency is moot and thus
appellant's conditional effective assistance of counsel argument is likewise moot. See In
re J.L., 163 S.W.3d at 83.

 X. Due Process Right to Contact Children

 Appellant lists a litany of alleged abuses by CPS. According to appellant, CPS filed
unfounded or false affidavits. Many witnesses testified that appellant had good parenting
skills and that she should have been afforded greater access to the children. CPS failed
to take corrective action and denied appellant due process by limiting her visits at the CPS
office for six months and limiting the visits to one to two hours at sites away from CPS. 
CPS never made an effort to return the children to appellant. "CPS set unhealthy,
impractical, and painfully inadequate visitation" for her children.

 The State responds that in order to preserve error for appeal, a party must make a
timely and specific objection. We agree. Tex. R. App. P. 33.1; see also In re S.E.W.,168
S.W.3d 875, 885 (Tex. App.-Dallas 2005, no pet). Next, the State argues the trial court
did not abuse its discretion in entering the visitation orders because appellant affirmatively
agreed to them and did not move to modify the orders. Again, we agree. The court's order
of May 31, 2000 was signed and agreed to by appellant and appellant acknowledged this
in open court. She was incarcerated at the time and some of the services were to be
accomplished in jail. Several more orders followed. Appellant does not point out, nor do
we perceive, where any objection was made to these orders or brought to the attention of
the trial judge. In fact, in at least two instances appellant's trial counsel approved 
subsequent orders including the terms of visitation. Because appellant did not timely
object, she did not preserve error, if any. See Rogers v. Dep't of Family and Protective
Servs., 175 S.W.3d 370, 377 (Tex. App.-Houston [1st Dist.] 2005, no pet.); S.E.W.,168
S.W.3d at 886. This issue is overruled.

 The judgment of the trial court is affirmed. 

 

 DON WITTIG, 

 JUSTICE

 

Memorandum Opinion delivered and 

filed this the 28th day of December, 2006. 
1. Retired Justice Don Wittig assigned to this Court by the Chief Justice of the Supreme Court of Texas
pursuant to Tex. Gov't Code Ann. § 74.003 (Vernon Supp. 2004). 
2. We find no such evidence in the reporter's record. We further note that all ten jurors signed the
verdict as required by law.